Filed 9/7/22 (unmodified opn. attached)

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, et al.,<br><br>    Plaintiffs and Respondents,<br><br>v.<br><br>CALVARY CHAPEL SAN JOSE et al.,<br><br>    Defendants and Appellants. | H048708<br>(Santa Clara County<br>Super. Ct. No. 20CV372285) |
| CALVARY CHAPEL SAN JOSE, et al.,<br><br>    Petitioners,<br><br>v.<br><br>THE SUPERIOR COURT OF SANTA<br>CLARA COUNTY,<br><br>    Respondent;<br><br>THE PEOPLE, et al.,<br><br>    Real Parties in Interest. | H048734<br>(Santa Clara County<br>Super. Ct. No. 20CV372285) |
| MIKE MCCLURE, et al.,<br><br>    Petitioners,<br><br>v.<br><br>THE SUPERIOR COURT OF SANTA<br>CLARA COUNTY,<br><br>    Respondent;<br><br>THE PEOPLE, et al.,<br><br>    Real Parties in Interest. | H048947<br>(Santa Clara County<br>Super. Ct. No. 20CV372285)<br><br>**ORDER MODIFYING OPINION<br>AND DENYING PETITION FOR<br>REHEARING**<br><br>**NO CHANGE IN JUDGMENT** |

The court orders that the opinion filed on August 15, 2022, be modified as follows:

On page 5, lines 1-6, replace "Tier III" with "Tier II" so the sentence reads:

(3) the State's August 28, 2020 order implementing the "Blueprint for a Safer Economy," a tiered system for modifying public health measures based on Covid-19 test and case rates, which placed the County in the most restrictive Tier I (prohibiting indoor gatherings) prior to September 8, 2020, and then in the less restrictive Tier II (imposing capacity limitations on gatherings of 25% capacity or 100 persons, whichever was fewer);

On page 11, fourth full paragraph, lines 1-2, and page 12, line 1, replace "*Roman Catholic Diocese*, *supra*, 592 U.S. ___ [141 S. Ct. 63] and *Harvest Rock I*, *supra*, 592 U.S. ___ [141 S. Ct 889]" with "*South Bay United Pentecostal Church v. Newsom* (2021) 592 U.S. ___ [141 S. Ct. 716] and *Harvest Rock Church v. Newsom* (2021) 592 U.S.__ [141 S. Ct. 1289]" so the sentence reads:

The trial court also determined that the decisions in *South Bay United Pentecostal Church v. Newsom* (2021) 592 U.S. ___ [141 S. Ct. 716] and *Harvest Rock Church v. Newsom* (2021) 592 U.S.___ [141 S. Ct. 1289], were "distinguishable because the County's public health orders are neutral and restrict all gatherings without reference to purpose."

On page 12, second full paragraph, line 3, replace "$22,000" with "$22,500" so the sentence reads:

1) McClure was ordered to pay $15,000 pursuant to section 1218, subdivision (a) as a penalty for the contempt finding and $22,500 pursuant to section 177.5 for violating the modified temporary restraining order and preliminary injunction;

On page 23, first full paragraph, line 2 and line 4, insert "restrictions on indoor singing and" so the first two sentences read:

We need not determine whether the November 2, 2020 temporary restraining order is unconstitutional with respect to the health order's restrictions on indoor singing and requirements for face coverings, social distancing, and submission of a social distancing protocol. Even assuming, without deciding, that the health order's restrictions on indoor singing and requirements for face coverings, social distancing, and submission of a social distancing protocol might pass constitutional muster, we cannot on this record uphold the sanctions imposed by the trial court.

On page 26, second full paragraph, line 3, insert "restrictions on indoor singing and" so the sentence reads:

Moreover, even assuming, without deciding, that the November 2, 2020 temporary restraining order is not unconstitutional on its face with respect to the violations of the health order's restrictions on indoor singing and requirements for face coverings, social

2

distancing, and submission of a social distancing protocol, we cannot on this record uphold the, December 17, 2020 contempt order.

On page 31, first full paragraph, line 8, insert "the restrictions on indoor singing and" so the sentence reads:

On the record before us, it is not possible to separate Calvary Chapel's violations of the prohibition on indoor gatherings from the violations of the restrictions on indoor singing and the requirements for social distancing, face coverings, and submission of a social distancing protocol.

The petition for rehearing filed on behalf of the People by the County of Santa Clara is denied.

There is no change in the judgment.

_____
Greenwood, P. J.

_____          _____
Bamattre-Manoukian, J.                                              Danner, J.

| Trial Court: | Santa Clara County Superior Court |
| | Superior Court No: 20CV372285 |

| Trial Judge: | The Honorable Peter H. Kirwan |

| Attorneys for Defendants and Appellants | Robert Henry Tyler |
| CALVARY CHAPEL SAN JOSE et al.: | Mariah Rose Gondeiro |
| | Advocates for Faith & Freedom |

| Attorneys for Plaintiffs and Respondents | James Robyzad Williams, |
| THE PEOPLE, et al.: | County Counsel |
| | |
| | Melissa Kiniyalocts, |
| | Lead Deputy County Counsel |
| | |
| | Meredith A. Johnson, |
| | Deputy County Counsel |
| | |
| | Jeremy Anthony Avila, |
| | Deputy County Counsel |
| | |
| | Jeffrey F. Rosen |
| | District Attorney |
| | |
| | David A. Angel |
| | Assistant District Attorney |

People et al. v. Calvary Chapel San Jose et al.
H048708

| Attorneys for Petitioners | Robert Henry Tyler |
| CALVARY CHAPEL SAN JOSE, et al.: | Mariah Rose Gondeiro |
| | Tyler & Bursch, LLP |

| Attorneys for Real Party in Interest | James Robyzad Williams, |
| THE PEOPLE et al: | County Counsel |
| | |
| | Melissa Kiniyalocts, |
| | Lead Deputy County Counsel |
| | |
| | Meredith A. Johnson, |
| | Deputy County Counsel |

Jeremy Anthony Avila,
Deputy County Counsel

Jeffrey F. Rosen
District Attorney

David A. Angel
Assistant District Attorney


Calvary Chapel San Jose et al. v. Superior Court
H048734

Attorneys for Petitioners                    Robert Henry Tyler
Mike McClure et al.:                         Mariah Rose Gondeiro
                                             Tyler & Bursch, LLP


Attorneys for Respondent                     James Robyzad Williams,
THE PEOPLE:                                  County Counsel

                                             Melissa Kiniyalocts,
                                             Lead Deputy County Counsel

                                             Meredith A. Johnson,
                                             Deputy County Counsel

                                             Jeremy Anthony Avila,
                                             Deputy County Counsel

                                             Jeffrey F. Rosen
                                             District Attorney

                                             David A. Angel
                                             Assistant District Attorney


McClure et al. v. Superior Court
H048947

Filed 8/15/22 (unmodified version)

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, et al., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> CALVARY CHAPEL SAN JOSE et al., <br><br> Defendants and Appellants. | H048708 <br> (Santa Clara County <br> Super. Ct. No. 20CV372285) |
| CALVARY CHAPEL SAN JOSE, et al., <br><br> Petitioners, <br><br> v. <br><br> THE SUPERIOR COURT OF SANTA CLARA COUNTY, <br><br> Respondent; <br><br> THE PEOPLE, et al., <br><br> Real Parties in Interest. | H048734 <br> (Santa Clara County <br> Super. Ct. No. 20CV372285) |

| | |
|---|---|
| MIKE MCCLURE, et al.,<br><br>      Petitioners,<br><br>      v.<br><br>THE SUPERIOR COURT OF SANTA<br>CLARA COUNTY,<br><br>      Respondent;<br><br>THE PEOPLE, et al.,<br><br>      Real Parties in Interest. | H048947<br>(Santa Clara County<br>Super. Ct. No. 20CV372285) |

## I. INTRODUCTION

In 2020 the State of California and the County of Santa Clara (collectively, the People) issued a series of public health orders intended to combat the Covid-19 pandemic. Relevant here, the public health orders included orders restricting indoor gatherings and requiring face coverings, social distancing, and submission of a social distancing protocol by businesses, including churches. Calvary Chapel San Jose (Calvary Chapel) and its pastors, Mike McClure and Carson Atherley (collectively, Calvary Chapel), failed to comply with any of these public health orders.

Due to Calvary Chapel's ongoing failure to comply with the public health orders, the People filed a complaint for injunctive relief. The trial court issued a November 2, 2020 temporary restraining order, followed by a November 24, 2020 modified temporary restraining order and preliminary injunction that enjoined Calvary Chapel from holding indoor gatherings that did not comply with the public health orders' restrictions on indoor gatherings and requirements that participants wear face coverings and socially distance. Calvary Chapel was also enjoined from operating without submitting a social distancing protocol to the County.

It is undisputed that Calvary Chapel violated the November 2, 2020 temporary restraining order, the November 24, 2020 modified temporary restraining order, and the

2

preliminary injunction by failing to comply with any of the public health orders. The People then sought an order of contempt, which the trial court issued on December 17, 2020, based on Calvary Chapel's violation of the November 2, 2020 temporary restraining order and preliminary injunction. The trial court also issued a February 16, 2021 order of contempt, based on Calvary Chapel's violation of the November 24, 2020 modified temporary restraining order. The trial court additionally ordered Calvary Chapel, McClure, and Atherley to pay monetary sanctions pursuant to Code of Civil Procedure section 177.5[1] for violation of the court's orders, and pursuant to section 1218, subdivision (a) for contempt of court.

Calvary Chapel now seeks review of the trial court's contempt orders and orders to pay monetary sanctions in the three cases before us, including H048708, *People v. Calvary Chapel*; H048734, *Calvary Chapel v. Superior Court*; and H048947, *McClure v. Superior Court*.[2] For the reasons stated below, we conclude that the temporary restraining orders and preliminary injunctions are facially unconstitutional pursuant to the recent guidance of the United States Supreme Court regarding the First Amendment's protection of the free exercise of religion in the context of public health orders that impact religious practice (see, e.g., *Tandon v. Newsom* (2021) 593 U.S. __ [141 S. Ct. 1294] (*Tandon*).) As the underlying orders which Calvary Chapel violated are void and unenforceable, we will annul the orders of contempt in their entirety and reverse the orders to pay monetary sanctions. (See *In re Berry* (1968) 68 Cal.2d 127, 140, 157 (*Berry*).)

_____

[1] All subsequent undesignated statutory references are to the Code of Civil Procedure.

[2] On the court's own motion, we ordered case Nos. H048708, H048734, and H048947 to be considered together for purposes of oral argument and disposition.

## II. Factual And Procedural Background

### A. *The Preliminary Injunction*

#### 1. The Complaint

In October 2020 plaintiffs the People of the State of California, the County of Santa Clara (County), and Sara H. Cody, M.D. (Dr. Cody) in her official capacity as Health Officer for the County of Santa Clara, filed a complaint for injunctive relief against defendants Calvary Chapel and its senior pastor, Mike McClure (collectively Calvary Chapel).

Plaintiffs alleged that Calvary Chapel had failed to comply with certain state and county public health orders that had been issued to protect the public during the COVID-19 pandemic at a time when no cure or vaccine was available. Plaintiffs asserted that "[t]he best way to protect the public from COVID-19 is to undertake risk-mitigation measures to prevent transmission and infection, such as avoiding indoor gatherings, wearing face coverings, keeping sufficient physical distance, and avoiding singing or shouting near others while indoors." Plaintiffs further asserted that the evidence had shown that indoor gatherings posed a greater risk of COVID-19 transmission, since the virus spread from person to person through respiratory droplets, and that "[c]hurch gatherings are a common source of 'superspreader' events."

The specific public health orders that Calvary Chapel had violated included, according to plaintiffs, the following orders: (1) the County's July 2, 2020 risk reduction order requiring all businesses to submit a social distancing protocol, requiring all persons to maintain a minimum distance of six feet from persons outside their household, requiring all persons within a business (including a church) to wear face coverings unless medically exempt, and imposing limitations on gatherings as subsequently directed by Dr. Cody; (2) Dr. Cody's gatherings directives, as revised from July 8, 2020, through September 8, 2020, that prohibited indoor gatherings that brought "together multiple people from separate households in a single space," such as religious services, and

4

required face coverings for outdoor gatherings unless medically exempt; (3) the State's August 28, 2020 order implementing the "Blueprint for a Safer Economy," a tiered system for modifying public health measures based on Covid-19 test and case rates, which placed the County in the most restrictive Tier 1 (prohibiting indoor gatherings) prior to September 8, 2020, and then in the less restrictive Tier III (imposing capacity limitations on gatherings of 25% capacity or 100 persons, whichever was fewer); (4) the County's October 5, 2020 revised risk reduction order, which applied to all activities and sectors and required submission of a social distancing protocol, wearing face coverings at all times (including inside churches), and maintaining six feet of social distance from persons outside one's household; and (5) Dr. Cody's October 13, 2020 revised gatherings directive, which allowed indoor gatherings with a capacity limitation of 25% or 100 persons, whichever was fewer, and continued to prohibit indoor singing.

To authorize enforcement of these and other pandemic-related public health orders, on August 11, 2020, the County's Board of Supervisors adopted Urgency Ordinance No. NS-9.921, which created "a comprehensive civil enforcement program to combat the spread of COVID-19." The Urgency Ordinance included a schedule of fines for violation of the public health orders, as confirmed or observed by the County's code enforcement officers during their investigation of public complaints.

After receiving a complaint about Calvary Chapel, the County issued an August 21, 2020 cease and desist letter that demanded that Calvary Chapel comply with the public health orders and cease to hold indoor gatherings. Calvary Chapel allegedly failed to comply with the cease-and-desist letter. After the County's code enforcement officers' investigations revealed that Calvary Chapel had continued to violate the public health orders, they issued a series of notices of violation of health officer orders from August 23, 2020, to October 25, 2020. According to plaintiffs, Calvary Chapel has accrued more than $350,000 in fines that were imposed by the County due to Calvary Chapel's unlawful

public gatherings and violations of the requirements for social distancing, face coverings, and submission of a social distancing protocol.[3]

Based on these and other allegations, including defendant McClure's statement in the local newspaper, the San Jose Mercury News, that Calvary Chapel would not comply with the public health orders, plaintiffs sought a temporary restraining order, a preliminary injunction, and a permanent injunction to enjoin Calvary Chapel "from conducting any gathering or service that does not fully comply with relevant State and County public health orders, including the Risk Reduction Order, the Gatherings Directive, the State August 28 Order, the Revised Risk Reduction Order, and the Revised Gatherings Directive."

### 2. November 2, 2020 Temporary Restraining Order

After filing their complaint, plaintiffs applied for a temporary restraining order and an order to show cause why a preliminary injunction should not issue. The trial court granted the application in the November 2, 2020 order.

The temporary restraining order included in the November 2, 2020 order enjoined Calvary Chapel from "1. Conducting any gathering that does not fully comply with both the State and County public health orders, including but not limited to: holding gatherings indoors in excess of 100 people or 25% of capacity, whichever is less; holding outdoor gatherings in excess of 200 people; allowing participants to attend gatherings without wearing face coverings; allowing participants to attend gatherings without maintaining adequate social distance; and allowing singing at indoor gatherings; [¶] 2. Operating, whether indoors or outdoors, without the prior submission and implementation of a Social Distancing Protocol." The November 2, 2020 order also included an order to show cause

---

[3] The record reflects that the County issued a notice of imposition of fines in the amount of $357,750 to Calvary Chapel on October 26, 2020, for violation of the public health orders. These fines are not at issue in the present appeal.

6

why a preliminary injunction should not issue enjoining Calvary Chapel as set forth in the temporary restraining order.

Additionally, the November 2, 2020 order directed the County to post the temporary restraining order on the Calvary Chapel property and authorized County personnel to enter the Calvary Chapel property to monitor compliance with the order.

### 3.  November 24, 2020 Modified Temporary Restraining Order

Plaintiffs subsequently applied for modification of the November 2, 2020 temporary restraining order on the grounds that the County had been moved to the more restrictive Tier I of the State's Blueprint for a Safer Economy, which prohibited indoor gatherings, including worship services, due to increasing Covid case counts.  The trial court granted the application in the November 24, 2020 order.

The November 24, 2020 modified temporary restraining order enjoined Calvary Chapel from the following:  "1.  Conducting any gathering that does not fully comply with both the State and County public health orders, including but not limited to, complying with prohibitions on:  holding gatherings indoors; holding outdoor gatherings in excess of 200 people; allowing participants to attend gatherings without wearing face coverings; allowing participants to attend gatherings without maintaining adequate social distance of no less than six feet; allowing singing or chanting at indoor gatherings; and  [¶]  2. Operating, whether indoors or outdoors, without the prior submission and implementation of a Social Distancing Protocol."

Additionally, the November 24, 2020 modified temporary restraining order directed the County to post the order on Calvary Chapel property, ordered Calvary Chapel not to remove the order once it was posted on Calvary Chapel property, and authorized the County personnel to enter Calvary Chapel property to monitor compliance with the order.

### 4.  Preliminary Injunction

After investigation by the County's code enforcement officers showed that Calvary Chapel was continuing to violate the public health orders by holding large indoor worship

7

services every Sunday without enforcing either the capacity limitations, the social distancing and face covering requirements, or the prohibition on singing, plaintiffs moved for a preliminary injunction. Plaintiffs sought to enjoin Calvary Chapel from "(1) holding or hosting indoor gatherings at their facilities that exceed 100 persons or 25% capacity, whichever is smaller, (2) allowing non-exempt persons to attend their indoor gatherings without face coverings, (3) allowing persons to attend their indoor gatherings without social distancing, (4) permitting singing indoors, and (5) failing to submit a Social Distancing Protocol."

The trial court granted the motion for a preliminary injunction in the December 4, 2020 order. In so ruling, the trial court rejected Calvary Chapel's argument that the public health orders violated the Free Exercise Clause of the First Amendment. The court determined that "the restrictions on 'indoor gatherings' are not specifically targeted at non-secular gatherings as they are generally applicable to both secular and non-secular indoor gatherings such as movie theatres, political gatherings, cultural events, community meetings, cardrooms, gyms, weddings, funerals, etc. These are gatherings where individuals have sustained indoor contact with other attendees as opposed to grocery or retail stores where contact is far more limited in duration. As these public health orders apply to both secular and non-secular gatherings, the Court finds that they are subject to a rational basis review and concludes that they are rationally related to a legitimate governmental interest—protecting public health and safety." The court also distinguished the recent United States Supreme Court decision in *Roman Catholic Diocese of Brooklyn v. Cuomo* (2020) 592 U.S. __ [141 S. Ct 63] (*Roman Catholic Diocese*), since the occupancy limits the Supreme Court found unconstitutional in that case appeared to target places of worship, and the plaintiff religious institutions had complied with all other public safety orders.

Nearly one year later, in the October 14, 2021 order, the trial court granted in part and denied in part Calvary Chapel's motion to dissolve the preliminary injunction. The

motion was denied in part because the trial court deemed the preliminary injunction to remain in effect as to all currently operative public health orders relating to Covid-19. The motion was granted as to public health orders "that were at issue at the time that the preliminary injunction was granted but have been rescinded and were, as of the date of the hearing on the Motion, no longer in effect (e.g., holding gatherings indoors, holding outdoor gatherings in excess of 200 people, allowing participants to attend gatherings without maintaining adequate social distance of no less than six feet, allowing singing or chanting at indoor gatherings)."

**B.  *December 17, 2020 Order of Contempt***

In November 2020 plaintiffs applied for an order to show cause re:  contempt and/or sanctions, in which they alleged that Calvary Chapel had violated the November 2, 2020 temporary restraining order every day since the order issued, and sought an order of contempt, monetary sanctions, and attorney's fees and costs.  The alleged violations included indoor gatherings that exceeded the capacity limitations and where the attendees did not wear face coverings, did not socially distance, and sang indoors.  Further, plaintiffs asserted that Calvary Chapel had failed to submit a social distancing protocol.

In opposition, Calvary Chapel argued that the November 2, 2020 temporary restraining order, the November 24, 2020 modified restraining order, and the preliminary injunction were invalid because each order was unconstitutional on its face and could not be the basis for a contempt order.  Calvary Chapel maintained that under *Roman Catholic Diocese*, *supra*, 592 US. __ [141 S. Ct. 63], the orders violated the Free Exercise Clause of the First Amendment because the public health orders' restrictions on indoor worship discriminated against churches since the same restrictions did not apply to secular businesses, such as grocery stores and shopping centers.

After issuing an order to show cause and holding a hearing, the trial court issued the December 17, 2020 order of contempt.  In the order, the trial court made the following findings of fact:  "[Calvary Chapel] willfully violated the [November 2, 2020 temporary

9

restraining order] in contempt of this Court's order every day from November 2, 2020, to November 23, 2020, inclusive, by holding indoor gatherings in excess of applicable capacity limits, permitting indoor gathering attendees to sing, not enforcing or requiring indoor gathering attendees to wear face coverings, not enforcing or requiring indoor gathering attendees to socially distance, and/or not submitting a Social Distancing Protocol to the County of Santa Clara Public Health Department.  The Court further finds true the facts from the Declaration of Mike McClure cited by Plaintiffs' counsel regarding Defendant McClure's admission that Defendants have violated the Court's orders and that they intend to continue to violate the Court's orders."

As also stated in the December 17, 2020 order, the trial court found that the November 2, 2020 temporary restraining order "was a lawful court order which the Court had authority to issue; that [Calvary Chapel] knew of the [temporary restraining order] that [Calvary Chapel was] capable of obeying the[temporary restraining order]; and that despite that ability, [Calvary Chapel] willfully disobeyed the [temporary restraining order] every day from November 2, 2020, to November 23, 2020, inclusive . . . .  The Court further finds that [Calvary Chapel's] violations of its lawful court order were done without good cause or substantial justification."

The trial court therefore found Calvary Chapel to be in contempt of court for violating the November 2, 2020 temporary restraining order.  Calvary Chapel was ordered to pay a fine of $1,000 per day pursuant to section 1218, subdivision (a) as penalty for the contempt finding, for a total of a $22,000.  Additionally, Calvary Chapel was ordered to pay a fine of $1,500 per day pursuant to section 177.5 as sanctions for violating the November 2, 2020 temporary restraining order, for a total of $33,000.

### C.  *February 16, 2021 Order of Contempt*

In December 2020 plaintiffs filed an application for an order show cause why Calvary Chapel and the individual defendants, senior pastor Mike McClure and administrative pastor Carson Atherley, should not be held in contempt of court for

10

violating the November 24, 2020 modified restraining order and the December 4, 2020 preliminary injunction.  Plaintiffs sought monetary sanctions and attorneys' fees and costs.

Plaintiffs asserted in their application that the evidence showed that Calvary Chapel's violations included holding numerous indoor gatherings at which attendees did not wear face coverings or socially distance, and sang indoors.  They also held several concerts and failed to properly submit a social distancing protocol.

Calvary Chapel opposed the application for an order show cause re contempt and monetary sanctions, arguing that the November 24, 2020 modified restraining order and the December 4, 2020 preliminary injunction were unconstitutional in light of the rulings in *Roman Catholic Diocese*, *supra*, 592 U.S. ___ [141 S. Ct. 63], and *Harvest Rock Church v. Newsom* (2020) 592 U.S. __ [141 S. Ct 889] (*Harvest Rock I*), that the public health orders that impose capacity restrictions on worship services, but not on other businesses and activities, are not neutral and therefore violate the Free Exercise Clause of the First Amendment.  Calvary Chapel also argued that expert witness testimony could not justify the discriminatory prohibition on indoor worship.

The trial court issued an order to show cause and after a three-day trial, ruled in the February 16, 2021 order that Calvary Chapel, McClure, and Atherley were in contempt of court.  As stated in the order of contempt, the trial court found that "that the Calvary Chapel Defendants . . . willfully violated the modified [temporary restraining order] and [preliminary injunction] order, . . . . from November 24, 2020, to January 3, 2021, inclusive, by holding indoor gatherings, permitting staff and attendees to sing at such gatherings, not enforcing or requiring staff and attendees to wear face coverings at such gatherings, not enforcing or requiring staff and attendees to socially distance at such gatherings, and/or not submitting a Social Distancing Protocol to the County of Santa Clara Public Health Department."

The trial court also determined that the decisions in *Roman Catholic Diocese*, *supra*, 592 U.S. __ [141 S. Ct. 63] and *Harvest Rock I*, *supra*, 592 U.S. __ [141 S. Ct

11

889], were "distinguishable because the County's public health orders are neutral and restrict all gatherings without reference to purpose." The trial court reasoned that these Supreme Court decisions did not preclude a finding of contempt, since "the contempt findings are based on multiple violations of the County's public health orders that were not disturbed by the Supreme Court . . . including allowing singing at indoor gatherings, not requiring attendees to wear face coverings or practice social distancing, and not submitting a Social Distancing Protocol."

Additionally, the trial court found that the modified temporary restraining order and preliminary injunction order were lawful court orders that the court had authority to issue, the Calvary Chapel defendants knew of the modified temporary restraining order and preliminary injunction, and the Calvary Chapel defendants were capable of obeying both orders and willfully disobeyed the orders every day from November 24, 2020, to January 3, 2021.

The February 16, 2021 order of contempt also included the following orders regarding fines: (1) McClure was ordered to pay $15,000 pursuant to section 1218, subdivision (a) as a penalty for the contempt finding and $22,000 pursuant to section 177.5 for violating the modified temporary restraining order and preliminary injunction; (2) Atherley was ordered to pay $11,000 pursuant to section 1218, subdivision (a) as a penalty for the contempt finding and $16,500 pursuant to section 177.5 for violating the modified temporary restraining order and preliminary injunction; and (3) Calvary Chapel was ordered to pay $35,000 pursuant to section 1218, subdivision (a) as penalty for the contempt finding and $52,500 pursuant to section 177.5 for violating the modified temporary restraining order and preliminary injunction; (4) Calvary Chapel was ordered to pay $13,000, suspended, pursuant to section 1218, subdivision (a) as a penalty for the contempt finding (failure to properly submit a completed social distancing protocol); and (5) Calvary Chapel was ordered to pay

12

$19,500, suspended, pursuant to section 177.5 for failure to properly submit a completed social distancing protocol.

### III. DISCUSSION

We begin our analysis with a chronological overview of the United States Supreme Court's per curiam opinions and orders that address public health orders arising from the pandemic, since the First Amendment principles that we derive from these rulings govern our review in each of the three cases before us.

### A. *Rulings of the United States Supreme Court*

"The Free Exercise Clause of the First Amendment, applicable to the States under the Fourteenth Amendment, provides that 'Congress shall make no law . . . prohibiting the free exercise' of religion." (*Fulton v. City of Philadelphia* (2021) __ U.S. __ [141 S. Ct. 1868, 1876].)  "In addressing the constitutional protection for free exercise of religion, our cases establish the general proposition that a law that is neutral and of general applicability need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice.  [Citation.]" (*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah* (1993) 508 U.S. 520, 531.)  However, "[a] law burdening religious practice that is not neutral or not of general application must undergo the most rigorous of scrutiny.  To satisfy the commands of the First Amendment, a law restrictive of religious practice must advance ' " 'interests of the highest order' " ' and must be narrowly tailored in pursuit of those interests.  [Citations.]" (*Id.* at p. 546.)

During the pandemic, the Supreme Court has considered the First Amendment's protection of the free exercise of religion in the context of state and local public health orders impacting religious practice.  In *South Bay United Pentecostal Church v. Newsom* (2020) __U.S. __ [140 S. Ct. 1613] (*South Bay I*), the Supreme Court ruled on an application for injunctive relief that would permit the South Bay United Pentecostal Church (South Bay Church) to hold in-person religious services without complying with the state and County of San Diego public health orders placing capacity limitations on

13

religious services. (See *South Bay United Pentecostal Church v. Newsom* (9th Cir. 2020) 959 F.3d 938, 939.)

The Supreme Court denied South Bay Church's application for injunctive relief. (*South Bay I*, *supra*, __ U.S. at p. __ [140 S. Ct. 1613].) In his concurring opinion on the court's order, Chief Justice Roberts stated: "Although California's guidelines place restrictions on places of worship, those restrictions appear consistent with the Free Exercise Clause of the First Amendment. Similar or more severe restrictions apply to comparable secular gatherings, including lectures, concerts, movie showings, spectator sports, and theatrical performances, where large groups of people gather in close proximity for extended periods of time. And the Order exempts or treats more leniently only dissimilar activities, such as operating grocery stores, banks, and laundromats, in which people neither congregate in large groups nor remain in close proximity for extended periods." (*Ibid.*)

A different public health order was at issue in *Roman Catholic Diocese, supra*, 592 U.S. __ [141 S. Ct. 63]. In that per curiam opinion, the Supreme Court considered the executive order of the Governor of New York imposing occupancy limits on attendance at religious services in certain areas classified as "red" or "orange." (*Id*. at p. __.) The Supreme Court granted the plaintiff religious institutions' application for injunctive relief from the occupancy limits on the grounds that the executive order was not neutral. (*Id*. at p. __.) Specifically, the high court found that "the regulations cannot be viewed as neutral because they single out houses of worship for especially harsh treatment. In a red zone, while a synagogue or church may not admit more than 10 persons, businesses categorized as 'essential' may admit as many people as they wish. And the list of 'essential' businesses includes things such as acupuncture facilities, camp grounds, garages, as well as many whose services are not limited to those that can be regarded as essential, . . . . The disparate treatment is even more striking in an orange zone. While attendance at houses of worship is limited to 25 persons, even non-essential businesses may decide for

14

themselves how many persons to admit." (*Roman Catholic Diocese, supra*, 592 U.S. __ [141 S. Ct. at p. 66].) The court emphasized that "even in a pandemic, the Constitution cannot be put away and forgotten. The restrictions at issue here, by effectively barring many from attending religious services, strike at the very heart of the First Amendment's guarantee of religious liberty." (*Id*. at p. 68.)

In more recent opinions and orders arising from challenges by religious institutions to the constitutionality of public health orders restricting indoor worship services in California, the Supreme Court has indicated that the court does not currently view such orders as neutral and of general applicability despite the restriction applying, as the Chief Justice stated in his concurring opinion in *South Bay I*, "to comparable secular gatherings." (*South Bay I*, *supra*, __ U.S. at p. __ [140 S. Ct. 1613].)

For example, in *Harvest Rock I*, *supra*, 592 U.S. ___, 141 S. Ct 889, the lower federal courts denied the application of plaintiff Harvest Rock Church for injunctive relief from enforcement of a public health order's ban on indoor religious services on the grounds that Harvest Rock Church's constitutional claim was unlikely to succeed, since the ban applied to comparable secular indoor gatherings such as lectures and movie theaters. (*Harvest Rock Church v. Newsom* (9th Cir. 2020) 977 F.3d 728, 730.)

Harvest Rock Church sought injunctive relief from the Supreme Court, which in an order remanded the case "to the United States Court of Appeals for the Ninth Circuit with instructions to remand to the District Court for further consideration in light of *Roman Catholic Diocese* [*supra*,] 592 U.S. ___, 141 S. Ct. 63, 208." (*Harvest Rock Church I*, *supra*, 592 U.S. at p. ___ [141 S. Ct 889].)

More specific direction was provided by the Supreme Court in a second case involving Harvest Rock Church, *Harvest Rock Church v. Newsom* (2021) 592 U.S._ [141 S. Ct. 1289] (*Harvest Rock II*), where the Supreme Court granted the church's application for injunctive relief in part in an order, as follows: "Respondent is enjoined from enforcing the Blueprint's Tier 1 prohibition on indoor worship services against the

15

applicants pending disposition of the appeal in the United States Court of Appeals for the Ninth Circuit . . . Application denied with respect to the percentage capacity limitations, and respondent is not enjoined from imposing a 25% capacity limitation on indoor worship services in Tier 1. Application denied with respect to the prohibition on singing and chanting during indoor services. This order is without prejudice to the applicants presenting new evidence to the District Court that the State is not applying the percentage capacity limitations or the prohibition on singing and chanting in a generally applicable manner." (*Harvest Rock II*, *supra*, 592 U.S. at p. __ [141 S. Ct. at pp. 1289-1290].)

On the same day the Supreme Court issued an order in *Harvest Rock II*, *supra*, 592 U.S. ___ [141 S. Ct. 1289], the court issued a nearly identical order in *South Bay United Pentecostal Church v. Newsom* (2021) 592 U.S. __ [141 S. Ct. 716] (*South Bay II*.) The order states: "Respondents are enjoined from enforcing the Blueprint's Tier 1 prohibition on indoor worship services against the applicants pending disposition of the petition for a writ of certiorari. The application is denied with respect to the percentage capacity limitations, and respondents are not enjoined from imposing a 25% capacity limitation on indoor worship services in Tier 1. The application is denied with respect to the prohibition on singing and chanting during indoor services. This order is without prejudice to the applicants presenting new evidence to the District Court that the State is not applying the percentage capacity limitations or the prohibition on singing and chanting in a generally applicable manner." (*Id*. at p. 716.)

Thereafter, in *Gateway City Church v. Newsom* (2021) 592 U.S. __ [141 S. Ct. 1460] (*Gateway City*), the Supreme Court stated unequivocally in an order that the Ninth Circuit's failure to grant Gateway City Church injunctive relief from the County's ban on indoor gatherings was "erroneous." The Ninth Circuit had ruled that "[t]he challenged ban on indoor 'gatherings' currently in effect for Santa Clara County applies equally to all indoor gatherings of any kind or type, whether public or private, religious or secular. The Directive, which appears to affect far more activities than most other jurisdictions' health

16

measures, does not 'single out houses of worship' for worse treatment than secular activities. [Citation.]" (*Gateway City Church v. Newsom* (9th Cir. Feb. 12, 2021, No. 21-15189) 2021 U.S. App. LEXIS 4221.) The Supreme Court granted Gateway City Church's application for injunctive relief, stating in the order that "[t]he Ninth Circuit's failure to grant relief was erroneous. This outcome is clearly dictated by this Court's decision in [*South Bay II*, *supra*,] 592 U.S. ___, 141 S. Ct. 716 (2021)." (*Gateway City*, *supra*, 592 U.S. at p. __ [141 S. Ct. 1460].)

The next Supreme Court order to arise from a California public health order concerned the orders of the state and the counties of Riverside and San Bernadino that prohibited all public or private indoor gatherings, including church services, but exempted businesses considered essential, such as courts, medical providers, and daycare providers, and also exempted necessary shopping at gas stations and stores. (*Gish v. Newsom* (2021) 592 U.S. __ [141 S. Ct. 1290] (*Gish*).) The district court and the Ninth Circuit denied the plaintiffs' requests for injunctive relief enjoining enforcement of the orders, and the district court then dismissed the action with prejudice. (*Gish v. Newsom* (C.D.Cal. Dec. 11, 2020, No. 5:20-cv-00755-JGB-KK) 2020 U.S.Dist.LEXIS 234733; *Gish v. Newsom* (9th Cir. Dec. 23, 2020, Nos. 20-55445, 20-56324) 2020 U.S. App. LEXIS 40327.) The plaintiffs applied to the Supreme Court for injunctive relief. In the order, the Supreme Court vacated the district court's dismissal order and remanded the case to the Ninth Circuit with instructions to remand the case to the district court for further consideration in light of *South Bay II*, *supra*, 592 U.S. __ [141 S. Ct. 716]. (*Gish*, *supra*, 592 U.S. __ [141 S. Ct. 1290].)

The Supreme Court then considered California public health orders restricting private indoor gatherings in a per curiam opinion, *Tandon*, *supra*, 593 U.S. __ [141 S. Ct. 1294]. In the underlying action, the district court denied the plaintiffs' motion for a preliminary injunction enjoining the state and Santa Clara County's public health orders limiting private gatherings to three households. (*Tandon v. Newsom* (9th Cir. 2021) 992

17

F.3d 916, 917.) The Ninth Circuit similarly denied relief, ruling that "[t]he gatherings restrictions at issue here do not impose a total ban on all indoor religious services, but instead limit private indoor and outdoor gatherings to three households. There is no indication that the State is applying the restrictions to in-home private religious gatherings any differently than to in-home private secular gatherings." (*Id*. at p. 922.)

The United States Supreme Court disagreed and granted the plaintiffs' application for injunctive relief pending appeal, stating that "[t]he Ninth Circuit's failure to grant an injunction pending appeal was erroneous." (*Tandon*, *supra*, 593 U.S. at p.__, [141 S. Ct. at p. 1296].) The court further stated that the plaintiffs were likely to succeed on their Free Exercise claim because (1) "California treats some comparable secular activities more favorably than at-home religious exercise, permitting hair salons, retail stores, personal care services, movie theaters, private suites at sporting events and concerts, and indoor restaurants to bring together more than three households at a time;" and (2) "[T]he Ninth Circuit did not conclude that those activities pose a lesser risk of transmission than *applicants*' proposed religious exercise at home." (*Id*. at p. 1297.)

The Supreme Court concluded in *Tandon* that "[t]his is the fifth time the Court has summarily rejected the Ninth Circuit's analysis of California's COVID restrictions on religious exercise. See [*Harvest Rock II, supra*,] 592 U. S. ___, 141 S. Ct. 889 (2020); [*South Bay II*], 592 U. S. at __, 141 S. Ct. 716; *Gish* v. *Newsom*, 592 U. S.__, [141 S. Ct. 1290] (2021); *Gateway City*, [*supra*], 592 U.S.___, [__S. Ct.__]. It is unsurprising that such litigants are entitled to relief. California's Blueprint System contains myriad exceptions and accommodations for comparable activities, thus requiring the application of strict scrutiny." (*Tandon, supra,* 593 U.S. at p. __ [141 S. Ct. at pp. 1297–1298].)

From these decisions, we understand the United States Supreme Court to hold that where a pandemic-related public health order prohibiting indoor gatherings has the effect of prohibiting indoor worship services, the order is not neutral and of general applicability if the public health order permits any other type of indoor secular activity, notwithstanding

18

that secular indoor gatherings are also banned.  Such public health orders are therefore unlikely to satisfy strict scrutiny review under the Free Exercise Clause.  (*South Bay II*, *supra*, 592 U.S. ___ [141 S. Ct. at p.__]; *Tandon*, *supra,* 593 U.S. at p. __ [141 S. Ct. 1294].)

We also understand the United States Supreme Court to have now ruled that public health orders placing capacity limitations on indoor public gatherings that have the effect of restricting indoor worship services also are unlikely to satisfy strict scrutiny review under the Free Exercise Clause where the same capacity limitations do not apply to all types of indoor secular activity, notwithstanding that secular indoor gatherings are also restricted.  (*Tandon*, *supra*, 593 U.S. at p. __ [141 S. Ct. 1294].)  We are mindful that in *Tandon*, the Supreme Court stated that "at-home religious exercise" was comparable for purposes of the Free Exercise Clause to "hair salons, retail stores, personal care services, movie theaters, private suites at sporting events and concerts, and indoor restaurants." (*Tandon*, *supra*, 593 U.S. at p. __ [141 S. Ct. at p. 1297].)

Having reviewed the pertinent United States Supreme Court rulings in the context of pandemic-related public health orders and the Free Exercise Clause of the First Amendment, we now turn to their application in each of the three cases before us.  We note that the trial court did not have the benefit of the Supreme Court's most recent guidance when the trial court ruled on the People's applications for an order to show cause re contempt and requests for monetary sanctions.

**B.  *H048708 People v. Calvary Chapel***

On appeal, Calvary Chapel seeks reversal of that portion of the December 17, 2020 order of contempt requiring Calvary Chapel to pay fines totaling $33,000 pursuant to section 177.5 as sanctions for violating the November 2, 2020 temporary restraining

19

order.[4]  Calvary Chapel argues that the trial court abused its discretion in ordering payment of fines pursuant to section 177.5 and also committed evidentiary error.[5]  We will begin our analysis with an overview of section 177.5.

### 1.  Section 177.5

Section 177.5 provides in part:  "A judicial officer shall have the power to impose reasonable money sanctions, not to exceed fifteen hundred dollars ($1,500), notwithstanding any other provision of law, payable to the court, for any violation of a lawful court order by a person, done without good cause or substantial justification."

An order imposing sanctions pursuant to section 177.5 is appealable as a final order on a collateral matter directing the payment of money.  (*Caldwell v. Samuels Jeweler* (1990) 222 Cal.App.3d 970, 975–976 (*Caldwell*).)  The standard of review for an order imposing monetary sanctions pursuant to section 177.5 is abuse of discretion.  (*Id.* at p. 977.)  Where "a trial court's decision is influenced by an erroneous understanding of applicable law or reflects an unawareness of the full scope of its discretion, it cannot be said the court has properly exercised its discretion under the law.  [Citations.]"  (*F.T. v. L.J.* (2011) 194 Cal.App.4th 1, 15-16.)

---

[4] The November 2, 2020 temporary restraining order enjoined Calvary Chapel from "1. Conducting any gathering that does not fully comply with both the State and County public health orders, including but not limited to:  holding gatherings indoors in excess of 100 people or 25% of capacity, whichever is less; holding outdoor gatherings in excess of 200 people; allowing participants to attend gatherings without wearing face coverings; allowing participants to attend gatherings without maintaining adequate social distance; and allowing singing at indoor gatherings;  [¶]  2. Operating, whether indoors or outdoors, without the prior submission and implementation of a Social Distancing Protocol."

[5] In its opening brief, Calvary Chapel also argues that the trial court erred in finding Calvary Chapel to be in contempt.  However, an order of contempt is not directly appealable.  (§ 1222; § 904.1, subd. (a)(2); *Bermudez v. Municipal Court* (1992) 1 Cal.4th 855, 861, fn. 5.)  Calvary Chapel also argues that the trial court committed evidentiary error in making the contempt ruling on the basis of witness declarations and denying it the opportunity to call live witnesses.  We will address Calvary Chapel's contentions regarding the contempt orders in the companion cases, H048734, *Calvary Chapel v. Superior Court,* and H048947, *McClure v. Superior Court, infra.*

### 2. The Parties' Contentions

Calvary Chapel does not dispute that it violated the November 2, 2020 temporary restraining order. We understand Calvary Chapel to argue, however, that the trial court abused its discretion in ordering sanctions under section 177.5 because the November 2, 2020 temporary restraining order was not a lawful court order. According to Calvary Chapel, the capacity limitations in the November 2, 2020 order that enjoined Calvary Chapel from "holding gatherings indoors in excess of 100 people or 25% of capacity, whichever is less" are unconstitutional under *Roman Catholic Diocese*, *supra*, 592 U.S. __ [141 S. Ct 63], because the capacity limitations were based on the County's October 13, 2020 revised gatherings directive, which applied to churches but "exempted bus stations, airports, grocery stores, restaurants, office buildings, and retail stores."[6] Calvary Chapel also argues that the public health orders requiring face coverings and social distancing are unconstitutional because those requirements were not applied to some secular activities, such as eating in restaurants. Also, Calvary Chapel asserts that requiring it to submit a social distancing protocol is unconstitutional because it requires Calvary Chapel to adhere to unconstitutional face covering and social distancing requirements and capacity limitations.

The People respond that the capacity limitations and restriction on indoor singing in the November 2, 2020 order were lawful under the relevant legal authority in effect on

---

[6] The County's October 13, 2020 revised gatherings directives states in part: "A gathering does not include, and this Directive does not apply to, normal operations held in childcare settings or preschool, kindergarten, elementary, secondary, or higher education classrooms; areas where people may be in transit (like train stations and airports); or settings in which people are in the same general space at the same time but doing separate activities, like medical offices, hospitals, or business environments like offices, stores, and restaurants where people may be working, shopping, or eating in the same general area but are not gathering together in an organized fashion. A gathering also does not include internal meetings solely among employees of a single business held at that business's own facility or worksite."

that date, and point out that Calvary Chapel did not oppose the November 2, 2020 temporary restraining order on the grounds that the face covering, social distancing, and social distancing protocol requirements were unconstitutional. Further, the People argue that the total amount of the sanctions order of $33,000 may be upheld on the basis that Calvary Chapel violated at least one provision of the November 2, 2020 order every day between November 2, 2020 and November 23, 2020.

### 3. Analysis

As we have discussed, we understand the United States Supreme Court in its most recent rulings to have clarified that public health orders placing capacity limitations on indoor public gatherings that have the effect of restricting indoor worship services are unlikely to survive strict scrutiny under the Free Exercise Clause where the same capacity limitations do not apply to all types of indoor secular activity, notwithstanding that secular indoor gatherings are also restricted. (*South Bay II*, *supra*, 592 U.S. ___ [141 S. Ct. 716]; *Tandon*, *supra*, 593 U.S. at p. __ [141 S. Ct. 1294].)

Here, the People do not dispute that the capacity limitations enforced on Calvary Chapel in the November 2, 2020 temporary restraining order do not apply, as Calvary Chapel asserts, to secular bus stations, airports, grocery stores, restaurants, office buildings, and retail stores. Further, the People do not assert that the capacity limitations can satisfy strict scrutiny review, as articulated by the Supreme Court in *Tandon*, *supra*, 593 U.S. at page __ [141 S. Ct. at page 1297]: "Where the government permits other activities to proceed with precautions, it must show that the religious exercise at issue is more dangerous than those activities even when the same precautions are applied. Otherwise, precautions that suffice for other activities suffice for religious exercise too. [Citations.]"

For these reasons, we determine that under *South Bay II*, *supra*, 592 U.S. __ [141 S. Ct. 716] and *Tandon*, *supra*, 593 U.S. __ [141 S. Ct. 1294], the November 2, 2020 temporary restraining order that enjoined Calvary Chapel from holding any indoor

22

gathering that did not comply with the capacity limitations of 100 people or 25 percent of capacity is unconstitutional because it discriminates against a religious institution in violation of the Free Exercise Clause of the First Amendment and the County has not satisfied its burden to show that the underlying health order satisfies strict scrutiny.

We need not determine whether the November 2, 2020 temporary restraining order is unconstitutional with respect to the health order's requirements for face coverings, social distancing, and submission of a social distancing protocol. Even assuming, without deciding, that the health order's requirements for face coverings, social distancing, and submission of a social distancing protocol might pass constitutional muster, we cannot on this record uphold the sanctions imposed by the trial court. The trial court did not impose discrete fines for violations of the capacity limitations and the violations of the requirements for social distancing, face coverings, and submission of a social distancing protocol but instead imposed a single, aggregate punishment. We will therefore reverse the order of December 17, 2020 requiring Calvary Chapel to pay fines totaling $33,000 in its entirety.

### C. *H048734 Calvary Chapel v. Superior Court*

Calvary Chapel filed a petition for review challenging the December 17, 2020 order of contempt, in which the trial court found that Calvary Chapel had violated the November 2, 2020 temporary restraining order every day from November 2, 2020, to November 23, 2020, by "holding indoor gatherings in excess of applicable capacity limits, permitting indoor gathering attendees to sing, not enforcing or requiring indoor gathering attendees to wear face coverings, not enforcing or requiring indoor gathering attendees to socially distance, and/or not submitting a Social Distancing Protocol." Calvary Chapel was also ordered to pay a fine of $1,000 per day pursuant to section 1218, subdivision (a) as penalty for the contempt finding, for a total of $22,000.

We granted Calvary Chapel's petition for review and allowed further briefing. Calvary Chapel contends that the contempt order must be annulled because the trial court

23

exceeded its jurisdiction in finding Calvary Chapel in contempt for violating an unconstitutional temporary restraining order. Calvary Chapel also contends that the trial court committed evidentiary error by making the contempt ruling on the basis of witness declarations rather than live witness testimony. We will begin our evaluation of these contentions with the requirements for an order of contempt and the applicable standard of review.

### 1. Requirements for Civil Contempt

"As the United States Supreme Court has observed, '[i]t is beyond question that obedience to judicial orders is an important public policy. An injunction issued by a court acting within its jurisdiction must be obeyed until the injunction is vacated or withdrawn. [Citations.]' (*W.R. Grace & Co. v. Rubber Workers* (1983) 461 U.S. 757, 766, 103 S Ct. 2177.) [¶] Under California's general contempt law, '[d]isobedience of any lawful judgment, order, or process of the court' is punishable as a civil contempt. ( . . .§ 1209, subd. (a)(5).)" (*City of Palo Alto v. Service Employees International Union* (1999) 77 Cal.App.4th 327, 338–339.)

" '[T]he elements of contempt include (1) a valid order, (2) knowledge of the order, (3) ability to comply with the order, and (4) willful failure to comply with the order. [Citations.]' [Citation.]" (*Wanke, Industrial, Commercial, Residential, Inc. v. Keck* (2012) 209 Cal.App.4th 1151, 1168.) However, "a party may not defend against enforcement of a court order by contending merely that the order is legally erroneous. [Citation.] . . . [O]nly an erroneous order that is either 'unconstitutional on its face' or 'in excess of the issuing court's jurisdiction' is subject to collateral attack in a later contempt proceeding for violating the order. [Citation.]" (*People v. Sorden* (2021) 65 Cal.App.5th 582, 593–594.)

Regarding monetary sanctions, section 1218, subdivision (a) provides in part: "Upon the answer and evidence taken, the court or judge shall determine whether the person proceeded against is guilty of the contempt charged, and if it be adjudged that the

24

person is guilty of the contempt, a fine may be imposed on the person not exceeding one thousand dollars ($1,000), payable to the court . . . ."  "Where separate contemptuous acts are committed, the contemner can be fined for each offense in the amount authorized by the code.  [Citations.]"  (*Donovan v. Superior Court* (1952) 39 Cal.2d 848, 855.)  We review an order imposing monetary sanctions pursuant to section 1218, subdivision (a) for abuse of discretion.  (See *Martorana v. Marlin & Salzman* (2009) 175 Cal.App.4th 685, 698; *Caldwell, supra*, 222 Cal.App.3d at p. 977 [orders for monetary sanctions generally reviewed under abuse of discretion standard].)

### 2.  The Parties' Contentions

Calvary Chapel does not dispute that it violated the November 2, 2020 temporary restraining order, instead contending that the November 2, 2020 temporary restraining order is facially unconstitutional.  As Calvary Chapel previously argued on appeal, the capacity limitations in the November 2, 2020 order that enjoined it from "holding gatherings indoors in excess of 100 people or 25% of capacity, whichever is less" are unconstitutional under *Roman Catholic Diocese*, *supra*, 592 U.S. __ [141 S. Ct 63], because the capacity limitations were based on the County's October 13, 2020 revised gatherings directive, which applied to churches but exempted "bus stations, airports, grocery stores, restaurants, office buildings, and retail stores."

The People disagree, maintaining that the capacity limitations as applied are constitutional, and asserting that the December 17, 2020 contempt order may be based upon Calvary Chapel's violations of the face covering and social distancing requirements, which Calvary Chapel did not challenge in its writ petition.

### 3.  Analysis

Our analysis is governed by the well-established rule that "an order unconstitutional on its face *is* in excess of jurisdiction and cannot sustain a contempt judgment.  [Citation.]"  (*People v. Gonzalez* (1996) 12 Cal.4th 804, 823 (*Gonzalez*).)  The California Supreme Court applied this rule in the First Amendment context in *Berry*,

25

*supra*, 68 Cal.2d 137.  The contempt order at issue in *Berry* held union members in contempt for violating a temporary restraining order that prohibited the union members from conducting a strike and picketing.  (*Id.* at p. 143.)  Our Supreme Court ruled that the temporary restraining order violated the union members' First Amendment right to free speech, since "[i]t is clear that peaceful picketing is an activity subject to absolute constitutional protection in the absence of a valid state interest justifying limitation or restriction.  [Citation.]"  (*Id.* at pp. 152, 155.)  The court concluded that the temporary restraining order was void on its face as unconstitutionally overbroad and an unnecessary restriction of First Amendment rights, and therefore granted the union members' petition for a writ of habeas corpus.  (*Id.* at pp. 150, 157.)

In the present case, we agree with Calvary Chapel that the November 2, 2020 temporary restraining order is unconstitutional on its face as to that portion of the order that compelled Calvary Chapel to comply with the public health order's capacity limitations on indoor gatherings.  As we have discussed, under *South Bay II*, *supra*, 592 U.S. __ [141 S Ct. 716] and *Tandon*, *supra*, 593 U.S. __ [141 S. Ct. 1294], we determine the portion of the November 2, 2020 temporary restraining order that enjoined Calvary Chapel from holding any indoor gathering that did not comply with the capacity limitations of 100 people or 25 percent of capacity is unconstitutional because it discriminated against a religious institution in violation of the Free Exercise Clause of the First Amendment.

Moreover, even assuming, without deciding, that the November 2, 2020 temporary restraining order is not unconstitutional on its face with respect to the violations of the health order's requirements for face coverings, social distancing, and submission of a social distancing protocol, we cannot on this record uphold the, December 17, 2020 contempt order.  (See, e.g., *Roman Catholic Diocese*, 592 U.S at p. __ [141 S. Ct 63]; *South Bay II*, *supra*, 592 U.S at p. __ [141 S. Ct. at p. 719] (conc. opn. of Gorsuch, J.).)  As the trial court imposed a single, aggregate sanction for violation of the temporary

26

restraining order, we must therefore annul the December 17, 2020 order of contempt in its entirety.

### 4. Evidentiary Error

Calvary Chapel contends that another basis for annulling the December 17, 2020 contempt order is the violation of procedural safeguards that occurred during the contempt hearing, consisting of the admission of the County's evidence solely on the basis of witness declarations over Calvary Chapel's objections. According to Calvary Chapel, this evidentiary error violated its constitutional right to confront and cross-examine witnesses in a criminal proceeding, including a quasi-criminal contempt proceeding.

The People respond that the trial court advised the parties prior to the contempt hearing that the court wanted them to submit on the papers as much as possible, that Calvary Chapel did not request the County to produce its witnesses or subpoena any witnesses, and therefore Calvary Chapel has waived any objection. The People also assert that the claimed error was harmless in any event since the facts of Calvary Chapel's violations of the November 2, 2020 temporary restraining order were undisputed.

Our review of the record shows that at the outset of the December 8, 2020 hearing on the order to show cause re contempt for Calvary Chapel's violation of the November 2, 2020 temporary restraining order, Calvary Chapel objected to the County submitting its evidence by way of witness declarations and argued that Calvary Chapel had a constitutional right to confront its accusers. The trial court overruled the objection after confirming that the court had requested that the matter proceed on the papers and had encouraged the parties to meet and confer with regard to witnesses. The court also confirmed with Calvary Chapel's counsel that Calvary Chapel had never asked the County to bring witnesses and had never attempted to subpoena any County witnesses.

We determine that even assuming, without deciding, that Calvary Chapel had a constitutional right under the Sixth Amendment to confront the County's witnesses at the contempt hearing, and that the County was obligated to provide live witnesses without any

27

action on Calvary Chapel's part, Calvary Chapel has forfeited that right. It is axiomatic that "a right may be lost not only by waiver but also by forfeiture, that is, the failure to assert the right in timely fashion. [Citations.]" (*People v. Barnum* (2003) 29 Cal. 4th 1210, 1224.) Our Supreme Court has further stated: " ' "No procedural principle is more familiar to this Court than that a *constitutional* right," or a right of any other sort, "may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it." . . .' [Citation.]" (*Keener v. Jeld-Wen, Inc.* (2009) 46 Cal.4th 247, 264.)

Here, it is apparent that Calvary Chapel did not timely assert that it had a constitutional right to confront the County's witnesses that would be violated by the contempt hearing proceeding solely on the basis of witness declarations. It is undisputed that the trial court requested the parties to proceed by way of declarations as much as possible, encouraged the parties to meet and confer with respect to witnesses, and that Calvary Chapel took no action to procure the attendance of the County's witnesses. Further, Calvary Chapel did not object to the contempt hearing proceeding by way of declarations, rather than live witnesses, until the day of the hearing. We therefore conclude that Calvary Chapel has forfeited its claim of an evidentiary error that violated its constitutional right to confrontation, and therefore the claimed error does not provide a basis for annulling the December 17, 2020 contempt order.

In the reply brief and during oral argument, Calvary Chapel additionally contended that its right to due process was violated at the contempt hearing because it was "denied the right to call their own witnesses," and that "Mike McClure and other expert witnesses were prepared for testimony." We ordinarily do not consider issues raised for the first time in a reply brief. (*Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 764–765.) We will address the issue, however, because our review of the record shows that Calvary Chapel is incorrect. The reporter's transcript for the December 8, 2020 contempt hearing includes the following colloquy:

"THE COURT: ·I'll turn it over to Defendants now.

"MR. TYLER:· Thank you, Your Honor.[¶]  I am not calling any witnesses, Your Honor,"

Accordingly, Calvary Chapel's due process contention lacks merit since Calvary Chapel was not denied the right to call its own witnesses at the December 8, 2020 contempt hearing.

**D.  *H048947 McClure v. Superior Court***

Calvary Chapel and individual defendants McClure and Atherley petitioned for review of the February 16, 2021 order of contempt, in which the trial court found that the Calvary Chapel defendants willfully violated the November 24, 2020 modified temporary restraining order and the preliminary injunction order from November 24, 2020, to January 3, 2021 by holding indoor gatherings, permitting singing at the gatherings, not enforcing or requiring face coverings at the gatherings, not enforcing or requiring socially distancing at the gatherings, and not submitting a social distancing protocol to the County of Santa Clara Public Health Department.[7]  The February 16, 2021 order also imposed monetary sanctions on Calvary Chapel, McClure, and Atherley under section 1218, subdivision (a) and section 177.5.

We granted the petition for review and allowed further briefing.  In its petition, Calvary Chapel argues that the February 16, 2021 order of contempt must be annulled because the violations of the November 24, 2020 modified temporary restraining order

---

[7] The November 24, 2020 modified temporary restraining order enjoined Calvary Chapel from the following: "1.  Conducting any gathering that does not fully comply with both the State and County public health orders, including but not limited to, complying with prohibitions on:  holding gatherings indoors; holding outdoor gatherings in excess of 200 people; allowing participants to attend gatherings without wearing face coverings; allowing participants to attend gatherings without maintaining adequate social distance of no less than six feet; allowing singing or chanting at indoor gatherings; and  [¶]  2. Operating, whether indoors or outdoors, without the prior submission and implementation of a Social Distancing Protocol."

29

and the preliminary injunction by Calvary Chapel, McClure, and Atherley cannot be the basis for a contempt finding because the orders are unconstitutional. They also argue that the contempt order must be annulled because the trial court committed evidentiary error by excluding the testimony of Dr. Cody.

### 1. February 16, 2021 Order of Contempt

Calvary Chapel contends that holding indoor religious services in violation of the November 24, 2020 modified temporary restraining order and the preliminary injunction cannot be the basis for a contempt order because the United States Supreme Court has ruled in several cases that a ban on indoor religious services violates the Free Exercise Clause. Calvary Chapel also contends that the ban on indoor singing and the requirements for face coverings, social distancing, and submission of a social distancing protocol are unconstitutional because they are not neutral and of general applicability, and therefore cannot be the basis of a contempt order.

The People disagree, arguing that both the November 24, 2020 modified temporary restraining order and the preliminary injunction were issued within the trial court's authority and as such were not void and may be the basis for a contempt order. Additionally, the People argue that the orders were not facially unconstitutional because no court has found that either the singing ban or the requirements for face coverings, social distancing, and submission of a social distancing protocol are unconstitutional. According to the People, even if the orders' ban on indoor religious services is deemed facially unconstitutional, the February 16, 2021 contempt order may stand on the violations of the requirements for face coverings, social distancing, and submission of a social distancing protocol.

We agree with Calvary Chapel that, as we have discussed, under the most recent Supreme Court rulings the prohibition on indoor gatherings in the November 24, 2020 modified restraining order and the preliminary injunction that effectively prohibited indoor worship services, while allowing certain secular indoor activities to occur, is

30

unconstitutional on its face as a violation of the Free Exercise Clause. (See *South Bay II*, *supra*, 592 U. S. __ [141 S Ct. at p.__]; *Tandon*, *supra,* 593 U.S. at p. __ [141 S. Ct. 1294].) Therefore, the February 16, 2021 order of contempt cannot be sustained on the basis that Calvary Chapel, McClure and Atherley violated the orders by holding indoor religious services and other indoor gatherings. (See *Gonzalez*, *supra*, 12 Cal.4th at p. 823; *Berry*, *supra*, 68 Cal.2d at pp. 150, 157.)

Further, as we have discussed, although the Supreme Court has not granted injunctive relief as to a challenge to a singing ban in a pandemic-related public health order, and has not directly addressed other pandemic-related public health measures such as face coverings and social distancing in its rulings, we need not determine whether the contempt order may be sustained on that ground. (See, e.g., *Roman Catholic Diocese*, 592 U.S at p. __ [141 S. Ct 63]; *South Bay II*, *supra*, 592 U.S at p. __ [141 S. Ct. at p. 719] (conc. opn. of Gorsuch, J.).) On the record before us, it is not possible to separate Calvary Chapel's violations of the prohibition on indoor gatherings from the violations of the requirements for social distancing, face coverings, and submission of a social distancing protocol. We will therefore reverse the February 16, 2021 order of contempt in its entirety.

### 2. Evidentiary Error

During the hearing held on the order to show cause re contempt, the trial court denied Calvary Chapel's request to have Dr. Cody, the County's public health officer, appear and testify regarding the County's public health orders, and also excluded Dr. Cody's declaration from evidence. The trial court determined that Dr. Cody's testimony was not relevant to the issue at bar of whether Calvary Chapel, McClure, and Atherley had willfully violated the November 24, 2020 modified temporary restraining order and the preliminary injunction, which the court had previously determined were valid, constitutional orders. Calvary Chapel contends that the trial court erred in

31

excluding Dr. Cody's testimony and declaration and the evidentiary error is another basis for annulling the February 16, 2021 order of contempt.

In *Shaw v. County of Santa Cruz* (2008) 170 Cal.App.4th 229 (*Shaw*), this court stated the applicable standard of review: "We review a trial court's evidentiary rulings for abuse of discretion. [Citation.] This is particularly so with respect to rulings that turn on the relevance of the proferred evidence. [Citation.] . . . . Discretion is abused only when in its exercise, the trial court 'exceeds the bounds of reason, all of the circumstances before it being considered.' [Citation.] There must be a showing of a clear case of abuse and miscarriage of justice in order to warrant a reversal. [Citation.] A trial court will abuse its discretion by action that is arbitrary or ' "that transgresses the confines of the applicable principles of law." ' [Citations.] In appeals challenging discretionary trial court rulings, it is the appellant's burden to establish an abuse of discretion." (*Id.* at p. 281.)

According to Calvary Chapel, "[t]he examination of Dr. Cody was necessary to determine whether the County could have implemented less restrictive orders to avoid the infringement of religious liberties. Dr. Cody would also have been questioned on the neutrality and general applicability of the orders. This determination is directly relevant to whether the public health orders were constitutional."

The People argue that the trial did not abuse its discretion because Dr. Cody's testimony was not relevant to the issue of the validity of the November 24, 2020 modified temporary restraining order and the preliminary injunction.

We determine that even assuming, without deciding, that the trial court abused its discretion in excluding the testimony and declaration of Dr. Cody, the error was not prejudicial since we have concluded, as discussed above, that the February 16, 2021 order of contempt must be annulled in its entirety. (See *Shaw*, *supra*, 170 Cal.App.4th at p. 281.) Accordingly, we conclude in the absence of prejudicial error that Calvary Chapel's claim of evidentiary error lacks merit.

## IV. DISPOSITION

In H048708, *People v. Calvary Chapel San Jose¸* the December 17, 2020 order requiring payment of monetary sanctions is reversed. The parties shall bear their own appellate costs.

In H048734, *Calvary Chapel San Jose v. Superior Court*, the December 17, 2020 order of contempt is annulled in its entirety. The parties shall bear their own appellate costs.

In H048947, *McClure v. Superior Court*, the February 16, 2021 order of contempt is annulled in its entirety. The parties shall bear their own appellate costs.

_____
    Greenwood, P. J.



WE CONCUR:




_____
    Bamattre-Manoukian, J.






_____
    Danner, J.





People et al. v. Calvary Chapel San Jose et al.
H048708
Calvary Chapel San Jose et al. v. Superior Court
H048734
McClure et al. v. Superior Court
H048947

| Trial Court: | Santa Clara County Superior Court |
| | Superior Court No: 20CV372285 |
| | |
| Trial Judge: | The Honorable Peter H. Kirwan |

Attorneys for Defendants and Appellants
CALVARY CHAPEL SAN JOSE et al.:

Robert Henry Tyler
Mariah Rose Gondeiro
Advocates for Faith & Freedom

Attorneys for Plaintiffs and Respondents
THE PEOPLE, et al.:

James Robyzad Williams,
County Counsel

Melissa Kiniyalocts,
Lead Deputy County Counsel

Meredith A. Johnson,
Deputy County Counsel

Jeremy Anthony Avila,
Deputy County Counsel

Jeffrey F. Rosen
District Attorney

David A. Angel
Assistant District Attorney

People et al. v. Calvary Chapel San Jose et al.
H048708

Attorneys for Petitioners
CALVARY CHAPEL SAN JOSE, et al.:

Robert Henry Tyler
Mariah Rose Gondeiro
Tyler & Bursch, LLP

Attorneys for Real Party in Interest
THE PEOPLE et al:

James Robyzad Williams,
County Counsel

Melissa Kiniyalocts,
Lead Deputy County Counsel

Meredith A. Johnson,
Deputy County Counsel

Jeremy Anthony Avila,
Deputy County Counsel

Jeffrey F. Rosen
District Attorney

David A. Angel
Assistant District Attorney

Calvary Chapel San Jose et al. v. Superior Court
H048734

Attorneys for Petitioners
MIKE MCCLURE, et al.:

Robert Henry Tyler
Mariah Rose Gondeiro
Tyler & Bursch, LLP


Attorneys for Respondent
THE PEOPLE:

James Robyzad Williams,
County Counsel

Melissa Kiniyalocts,
Lead Deputy County Counsel

Meredith A. Johnson,
Deputy County Counsel

Jeremy Anthony Avila,
Deputy County Counsel

Jeffrey F. Rosen
District Attorney

David A. Angel
Assistant District Attorney

McClure et al. v. Superior Court
H048947