ROBERTS, C. J., concurring

# SUPREME COURT OF THE UNITED STATES

No. 19A1044

SOUTH BAY UNITED PENTECOSTAL CHURCH, ET AL. *v.* GAVIN NEWSOM, GOVERNOR OF CALIFORNIA, ET AL.

ON APPLICATION FOR INJUNCTIVE RELIEF

[May 29, 2020]

The application for injunctive relief presented to JUSTICE KAGAN and by her referred to the Court is denied.

JUSTICE THOMAS, JUSTICE ALITO, JUSTICE GORSUCH, and JUSTICE KAVANAUGH would grant the application.

CHIEF JUSTICE ROBERTS, concurring in denial of application for injunctive relief.

The Governor of California's Executive Order aims to limit the spread of COVID–19, a novel severe acute respiratory illness that has killed thousands of people in California and more than 100,000 nationwide. At this time, there is no known cure, no effective treatment, and no vaccine. Because people may be infected but asymptomatic, they may unwittingly infect others. The Order places temporary numerical restrictions on public gatherings to address this extraordinary health emergency. State guidelines currently limit attendance at places of worship to 25% of building capacity or a maximum of 100 attendees.

Applicants seek to enjoin enforcement of the Order. "Such a request demands a significantly higher justification than a request for a stay because, unlike a stay, an injunction does not simply suspend judicial alteration of the status quo but grants judicial intervention that has been withheld by lower courts." *Respect Maine PAC* v. *McKee*, 562 U. S. 996 (2010) (internal quotation marks omitted). This

power is used where "the legal rights at issue are indisputably clear" and, even then, "sparingly and only in the most critical and exigent circumstances." S. Shapiro, K. Geller, T. Bishop, E. Hartnett & D. Himmelfarb, Supreme Court Practice §17.4, p. 17-9 (11th ed. 2019) (internal quotation marks omitted) (collecting cases).

Although California's guidelines place restrictions on places of worship, those restrictions appear consistent with the Free Exercise Clause of the First Amendment. Similar or more severe restrictions apply to comparable secular gatherings, including lectures, concerts, movie showings, spectator sports, and theatrical performances, where large groups of people gather in close proximity for extended periods of time. And the Order exempts or treats more leniently only dissimilar activities, such as operating grocery stores, banks, and laundromats, in which people neither congregate in large groups nor remain in close proximity for extended periods.

The precise question of when restrictions on particular social activities should be lifted during the pandemic is a dynamic and fact-intensive matter subject to reasonable disagreement. Our Constitution principally entrusts "[t]he safety and the health of the people" to the politically accountable officials of the States "to guard and protect." *Jacobson* v. *Massachusetts*, 197 U. S. 11, 38 (1905). When those officials "undertake[ ] to act in areas fraught with medical and scientific uncertainties," their latitude "must be especially broad." *Marshall* v. *United States*, 414 U. S. 417, 427 (1974). Where those broad limits are not exceeded, they should not be subject to second-guessing by an "unelected federal judiciary," which lacks the background, competence, and expertise to assess public health and is not accountable to the people. See *Garcia* v. *San Antonio Metropolitan Transit Authority*, 469 U. S. 528, 545 (1985).

That is especially true where, as here, a party seeks

ROBERTS, C. J., concurring

emergency relief in an interlocutory posture, while local officials are actively shaping their response to changing facts on the ground. The notion that it is "indisputably clear" that the Government's limitations are unconstitutional seems quite improbable.

# SUPREME COURT OF THE UNITED STATES

_____

No. 19A1044

_____

SOUTH BAY UNITED PENTECOSTAL CHURCH, ET AL.
*v.* GAVIN NEWSOM, GOVERNOR OF
CALIFORNIA, ET AL.

ON APPLICATION FOR INJUNCTIVE RELIEF

[May 29, 2020]

JUSTICE KAVANAUGH, with whom JUSTICE THOMAS and JUSTICE GORSUCH join, dissenting from denial of application for injunctive relief.

I would grant the Church's requested temporary injunction because California's latest safety guidelines discriminate against places of worship and in favor of comparable secular businesses. Such discrimination violates the First Amendment.

In response to the COVID–19 health crisis, California has now limited attendance at religious worship services to 25% of building capacity or 100 attendees, whichever is lower. The basic constitutional problem is that comparable secular businesses are not subject to a 25% occupancy cap, including factories, offices, supermarkets, restaurants, retail stores, pharmacies, shopping malls, pet grooming shops, bookstores, florists, hair salons, and cannabis dispensaries.

South Bay United Pentecostal Church has applied for temporary injunctive relief from California's 25% occupancy cap on religious worship services. Importantly, the Church is willing to abide by the State's rules that apply to comparable secular businesses, including the rules regarding social distancing and hygiene. But the Church objects to a 25% occupancy cap that is imposed on religious worship services but not imposed on those comparable secular businesses.

In my view, California's discrimination against religious worship services contravenes the Constitution. As a general matter, the "government may not use religion as a basis of classification for the imposition of duties, penalties, privileges or benefits." *McDaniel* v. *Paty*, 435 U. S. 618, 639 (1978) (Brennan, J., concurring in judgment). This Court has stated that discrimination against religion is "odious to our Constitution." *Trinity Lutheran Church of Columbia, Inc.* v. *Comer*, 582 U. S. ___, ___ (2017) (slip op., at 15); see also, *e.g., Good News Club* v. *Milford Central School*, 533 U. S. 98 (2001); *Rosenberger* v. *Rector and Visitors of Univ. of Va.*, 515 U. S. 819 (1995); *Church of Lukumi Babalu Aye, Inc.* v. *Hialeah*, 508 U. S. 520 (1993); *Lamb's Chapel* v. *Center Moriches Union Free School Dist.*, 508 U. S. 384 (1993); *McDaniel*, 435 U. S. 618.

To justify its discriminatory treatment of religious worship services, California must show that its rules are "justified by a compelling governmental interest" and "narrowly tailored to advance that interest." *Lukumi*, 508 U. S., at 531–532. California undoubtedly has a compelling interest in combating the spread of COVID–19 and protecting the health of its citizens. But "restrictions inexplicably applied to one group and exempted from another do little to further these goals and do much to burden religious freedom." *Roberts* v. *Neace*, 958 F. 3d 409, 414 (CA6 2020) (*per curiam*). What California needs is a compelling justification for distinguishing between (i) religious worship services and (ii) the litany of other secular businesses that are not subject to an occupancy cap.

California has not shown such a justification. The Church has agreed to abide by the State's rules that apply to comparable secular businesses. That raises important questions: "Assuming all of the same precautions are taken, why can someone safely walk down a grocery store aisle but not a pew? And why can someone safely interact with a brave deliverywoman but not with a stoic minister?" *Ibid.*

The Church and its congregants simply want to be treated equally to comparable secular businesses. California already trusts its residents and any number of businesses to adhere to proper social distancing and hygiene practices. The State cannot "assume the worst when people go to worship but assume the best when people go to work or go about the rest of their daily lives in permitted social settings." *Ibid.*

California has ample options that would allow it to combat the spread of COVID–19 without discriminating against religion. The State could "insist that the congregants adhere to social-distancing and other health requirements and leave it at that—just as the Governor has done for comparable secular activities." *Id.,* at 415. Or alternatively, the State could impose reasonable occupancy caps across the board. But absent a compelling justification (which the State has not offered), the State may not take a looser approach with, say, supermarkets, restaurants, factories, and offices while imposing stricter requirements on places of worship.

The State also has substantial room to draw lines, especially in an emergency. But as relevant here, the Constitution imposes one key restriction on that line-drawing: The State may not discriminate against religion.

In sum, California's 25% occupancy cap on religious worship services indisputably discriminates against religion, and such discrimination violates the First Amendment. See *Ohio Citizens for Responsible Energy, Inc.* v. *NRC*, 479 U. S. 1312 (1986) (Scalia, J., in chambers). The Church would suffer irreparable harm from not being able to hold services on Pentecost Sunday in a way that comparable secular businesses and persons can conduct their activities. I would therefore grant the Church's request for a temporary injunction. I respectfully dissent.