FILED

OCT 13 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

**FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| MI FAMILIA VOTA; ARIZONA COALITION FOR CHANGE; ULISES VENTURA, | Nos. 20-16932<br>20-17000 |
| Plaintiffs-Appellees, | D.C. No. 2:20-cv-01903-SPL<br>District of Arizona,<br>Phoenix |
| v. | |
| KATIE HOBBS, in her official capacity as Arizona Secretary of State, | ORDER |
| Defendant-Appellant, | |
| REPUBLICAN NATIONAL COMMITTEE; NATIONAL REPUBLICAN SENATORIAL COMMITTEE, | |
| Intervenor-Defendants-Appellants, | |
| STATE OF ARIZONA, | |
| Intervenor-Pending. | |

Before:  W. FLETCHER, BERZON, and BYBEE, Circuit Judges.

PER CURIAM Order, Partial Dissent by Judge BYBEE

Since 1990, Arizona law has required that residents wishing to participate in

an election submit their voter registration no later than 29 days prior to election day in order to vote in that election. *See* Ariz. Rev. Stat. § 16-120(A). Based on the November 3, 2020 date for the general election this year, the registration cut-off date prescribed by § 16-120(A) was October 5, 2020.

Plaintiff-Appellees are Mi Familia Vota and Arizona Coalition for Change, two nonprofit organizations that register voters, and Ulises Ventura, an employee of Mi Familia Vota who registers voters. In March 2020, the COVID-19 pandemic hit the United States. The pandemic and related government restrictions over the ensuing months disrupted Plaintiff-Appellees' efforts to register voters. Before a state-mandated shutdown on March 30, Plaintiff-Appellees were registering over 1,523 voters a week. This number dropped to as low as 282 a week during the several months of restrictions.

The district court enjoined the Secretary's enforcement of the October 5, 2020 deadline prescribed in § 16-120(A), holding that it was unconstitutional as applied during the COVID-19 pandemic. The Secretary appealed, requesting a prospective stay of this injunction. We grant this stay effective two days from today.

## I. Factual and Procedural Background

On September 30, 2020—only five days before the deadline set under

2

§ 16-120(A)—Plaintiff-Appellees filed a complaint in federal district court for the District of Arizona against the Arizona Secretary of State Katie Hobbs ("the Secretary"), the chief state elections officer. *See* Ariz. Rev. Stat. § 16-142. Their complaint alleged a violation of their First Amendment "rights to associate and engage in free speech to register voters and get out the vote," and their Fourteenth Amendment due process right incorporating the First Amendment. They sought a declaratory judgment that the deadline was unconstitutional as applied, and an injunction requiring the Secretary to extend the deadline. On October 2, 2020, the Secretary, represented by the Attorney General of Arizona, filed a Response in Opposition. On that same day, Intervenor-Defendants Republican National Committee and National Republican Senatorial Committee (collectively, "the RNC") filed a Motion to Intervene, which the district court granted. The district court also granted leave for several amici to file briefs. On October 5, 2020, the court held oral argument.

On October 5, 2020—the day of the registration deadline in § 16-120(A), the day of oral argument, and five days after the filing of the lawsuit—the district court issued a preliminary injunction against the Secretary's enforcement of § 16-120(A) and delaying the registration deadline. *See Mi Familia Vota*, No. CV-20-01903, 2020 WL 5904952 (D. Ariz. Oct. 5, 2020). The injunction extended the

3

registration deadline by eighteen days to October 23, 2020, and ordered that anyone registering by that date be allowed to vote in the November 3 election.

Initially, the Secretary indicated that she would not appeal. Intervenor RNC filed a notice of appeal on October 5, an emergency motion for an administrative stay on October 6, and a motion for stay pending appeal on October 8. Plaintiff-Appellees filed a motion to dismiss RNC's appeal on October 6, arguing that because it is a non-state party the RNC has no standing to appeal. *See Hollingsworth v. Perry*, 570 U.S. 693, 715 (2013) (declining to uphold "the standing of a private party to defend the constitutionality of a state statute when state officials have chosen not to [defend it]"). Also on October 6, the Attorney General moved to intervene, purporting to represent the State of Arizona. The Attorney General had represented the Secretary during the litigation in the district court but now no longer did so. Our court asked for expedited briefing and set oral argument for October 12. We invited the Secretary to express whatever views she might have. On October 11, the Secretary, now represented by outside counsel, notified us that she would appeal the district court's injunction and would appear at oral argument.

On the morning of October 12, 2020, the Secretary filed a notice of appeal. We held oral argument in the afternoon on October 12, 2020. Plaintiff-Appellees,

4

the Secretary, the Attorney General, and the RNC all argued.

At our invitation after oral argument, Plaintiff-Appellees, the Secretary, the Attorney General, and the RNC entered into settlement negotiations with the assistance of a mediator of our court. This afternoon, Plaintiff-Appellees and the Secretary entered into a stipulation agreeing to a prospective stay that would take effect on October 16, 2020 at 11:59 p.m. The Secretary did not agree to withdraw her appeal, and intervenor RNC therefore continues to be a proper party before our court. The RNC did not join the stipulation. Because the RNC did not join the stipulation, we do not regard it as settling whether a stay pending appeal should be granted; whether, if granted, the stay should be prospective; and when, if prospective, the stay should take effect. We decide all of those questions independent of the stipulation.

## II. Discussion

Given the Secretary's decision to appeal, questions as to the RNC's right to appeal as a non-state party, and the authority of the Attorney General to bring an appeal on behalf of the State, have now been mooted for present purposes. Questions as to the Attorney General's authority to represent the State on the merits of the appeal, and to intervene in the Secretary's appeal, remain. However, in the present posture of the appeal, we need not resolve those questions.

5

In deciding whether to grant a stay pending appeal, we apply the factors set forth in *Nken v. Holder*, 556 U.S. 418, 434 (2009). *See Al Otro Lado v. Wolf*, 952 F.3d 999, 1006–07 (9th Cir. 2020). We consider the following four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id.* (citing *Nken*, 556 U.S. at 434). "The first two factors . . . are the most critical." *Id.* at 1007.

We conclude that the factors weigh in favor of a stay pending appeal.

The first factor, likelihood of success on the merits, is the most important. We conclude that there is a sufficiently high likelihood of success on appeal.

First, there has been no facial challenge to the statutory registration deadline. Plaintiff-Appellees argue only that the deadline is unconstitutional as applied because of the effect of COVID-19 on their attempts to register voters. We recognize that the Governor imposed restrictions based on the public health emergency created by COVID-19 and that they had the effect of limiting voter registration efforts. But those restrictions were more than amply justified on grounds of public health. *See South Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613, 1613 (2020) (Roberts, C.J., concurring in denial of application for

injunctive relief) (stating that, when politically accountable officials "undertake[ ] to act in areas fraught with medical and scientific uncertainties, their latitude must be especially broad" (internal quotation marks omitted)).

Second, the statutory deadline does not impose a "severe burden" on Plaintiff-Appellees' asserted rights and does not trigger strict scrutiny. *See Burdick v. Takushi*, 504 U.S. 428, 434 (1992). More than six months transpired between the March 30 date, when the governor implemented restrictions, and the October 5 statutory deadline. While the restrictions made it more difficult for Plaintiff-Appellees to help voters to register, it was quite possible for them to do so during this period. Registration could be accomplished online or by mail, so in-person contact with potential registrants was unnecessary. And the Secretary and the Governor took steps to mitigate the difficulties. For example, Governor Ducey's stay-at-home order expressly exempted constitutionally protected speech activities such as voter registration efforts. Ariz. Exec. Order No. 2020-18 (Mar. 30, 2020), at 3.

Third, the administrative burdens on the state imposed by an October 23 registration deadline are significant. As the Secretary noted in her brief to us, the injunction has suddenly forced the County Recorders in local election offices—some with limited staffs of only two or three people in rural counties—to

7

process voter registrations while at the same time mailing and processing early ballots. By statute, early voting began on October 7. *See* Ariz. Rev. Stat. § 16-542. The Secretary also noted that the extended deadline makes more difficult compliance with other statutory deadlines to which officials must adhere, including (1) a deadline to complete precinct registers and e-pollbooks by October 24, and (2) a deadline for filing computer programs with the Secretary's office by October 17. *See* Ariz. Rev. Stat. §§ 16-168(A), 16-445(A). The extended deadline also interferes with county officials' ability to begin tabulating early ballots before election day.

Finally, even if the burden on voter registration were greater and the burden on the government less, courts "weigh," when contemplating ordering last-minute changes to state election rules, the consideration that "[c]ourt orders affecting elections, especially conflicting orders, can themselves result in voter confusion," and the risk increases "[a]s an election draws closer." *Purcell v. Gonzalez*, 549 U.S. 1, 4–5 (2006). Just last week, a motions panel of our court observed that "as we rapidly approach the election, the public interest is well served by preserving Arizona's existing election laws, rather than by sending the State scrambling to implement and administer" a district court's order. *Ariz. Democratic Party v. Hobbs*, 20-16759, 2020 WL 5903488, at *2 (9th Cir. Oct. 6, 2020). As in *Purcell*

itself, this consideration need not be "controlling" and does not supervene other relevant legal considerations applicable when reviewing the grant or denial of preliminary relief. 549 U.S. at 5. There may well be cases where a state election rule is so constitutionally problematic because of events such as a pandemic or natural disaster that a federal court must intervene, even shortly before an election. But this is not such a case, so Plaintiff-Appellees' extremely late filing relative to the deadline is a factor supporting the government's likelihood of success on the merits.

The remaining factors governing issuance of a stay also weigh in the Secretary's favor. As to the second factor, the Secretary is likely to be irreparably injured absent a stay because, as noted above, the injunction makes it considerably more difficult for her and other election officials to fulfill their statutory obligations in administering the election. By October 24, the County Recorders are required to compile four printed lists or two e-pollbooks of *all* registered voters. *See* Ariz. Rev. Stat. § 16-168(A). Only one day after the court-ordered registration deadline, it would be incredibly difficult for officials to accurately process all registrations—particularly paper registrations that contain nontraditional addresses in rural areas or on tribal lands—to create the lists required by statute. The Secretary has demonstrated that, absent a stay, she will have great difficulty in

"achiev[ing] and maintain[ing] the maximum degree of correctness, impartiality, uniformity and efficiency on the procedures for early voting and voting, and [in] producing, distributing, collecting, counting, tabulating and storing ballots." Ariz. Rev. Stat. § 16-452(A). She has therefore made a strong showing on the first two factors, which are the "most critical," *Nken*, 556 U.S. at 434.

The final two factors also support issuance of a stay. As to the third factor, the stay will not substantially injure the other parties interested in the proceeding. The facial constitutionality of the statutory deadline is unchallenged, and as applied does not impose a severe burden on Plaintiff-Appellees. As to the fourth factor, the public interest favors orderly administration of the election. States have "an interest in protecting the integrity, fairness, and efficiency of their ballots and election processes." *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 364 (1997).

We therefore conclude that a stay pending appeal is appropriate. Neither the Secretary nor the Attorney General seek a stay that would require the Secretary to forbid citizens who have already registered pursuant to the district court's order from voting. In their briefs to us, both the Secretary and the Attorney General have requested a prospective stay. The Secretary and the Attorney General both reiterated their requests during oral argument. The Secretary seeks a prospective

stay that would allow registration through the date of this order, plus a grace period. The Attorney General seeks a prospective stay that would allow registration only through the date of this order.

In support of a prospective rather than retroactive stay, the Secretary maintains that a retroactive stay would be unfair and might "cause irreparable harm to Arizona's voters[] and damage the public interest." Further, a retroactive stay would replicate some of the injuries that the injunction itself produced. The district court's order required officials to accept additional voter registrations while trying at the same time to complete statutorily required tasks. Much the same thing would happen under a retrospective stay, for officials would be required to undo what has been in compliance with the district court's order on top of those same tasks. Finally, a retrospective stay would be problematic given that early voting has begun, with the likely result that some of those who have registered after October 5 have already cast their ballots.

Second, the Supreme Court has recently employed the remedy of a prospective stay in similar election-law cases. Last week, the Court issued a prospective stay of a district court injunction that had invalidated South Carolina's witness requirement for absentee ballots. *Andino v. Middleton*, __ S. Ct. __, 2020 WL 5887393, at *1 (U.S. Oct. 5, 2020). The Court's remedial order held that "any

11

ballots cast before this stay issues and received within two days of this order may not be rejected for failing to comply with the witness requirement." *Id.*

Finally, the Supreme Court's election law jurisprudence counsels for deference to politically accountable state officials charged with the responsibility for conducting elections. Both of the state officials who have appeared before us seek only a prospective stay. The Secretary is the "chief state elections officer," and is in charge of "achiev[ing] and maintain[ing] the maximum degree of correctness, impartiality, uniformity and efficiency" in elections. Ariz. Rev. Stat. § 16-142; *id.* § 16-152. We need not decide whether the Attorney General is authorized in this case to represent the interests of the State. We will assume without deciding that he is so authorized. Ariz. Rev. Stat. § 41-193(A)(3). When state parties subject to a court order accede to that order, there is little cause for the court to disturb such an arrangement. *See Republican Nat'l Comm. v. Common Cause Rhode Island*, __ S. Ct. __, 2020 WL 4680151, at *1 (U.S. Aug. 13, 2020) (denying an application for a stay by intervenors because "here the state election officials support the challenged decree, and no state official has expressed opposition").

The Secretary of State also requests a prospective stay that would not take effect until a "reasonable grace period" after the date of our order. We agree, but

12

find reasonable a shorter period than the five days the Secretary suggests. As the Secretary recognizes, citizens who have begun the process of registering to vote but have not yet completed their registration have every reason to be relying on the district court's extension of the registration deadline in the same way as those who began and already completed the process during the pendency of the district court's order. And the conflicting orders are certainly confusing to potential registrants: The Secretary of State's website in compliance with the district court's order currently informs the citizenry that "[t]he voter registration deadline for the General Election has been extended to 5 p.m. on October 23, 2020 by a court order." But it also says that because "[t]his decision is subject to additional legal action ... Arizonans should update or complete their registration as soon as possible." Given that admonition and the Supreme Court's recent ruling in *Andino*, a two-day grace period is sufficient.

We thus grant the Secretary of State's specific request for a prospective stay, with a two-day grace period.

**So ORDERED.**

FILED

OCT 13 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

BYBEE, J., concurring in the stay but dissenting from the remedy:

Under Arizona law, an otherwise qualified elector "shall not vote in an election called pursuant to the laws of this state unless the elector has been registered to vote . . . before midnight of the twenty-ninth day preceding the date of the election." Ariz. Rev. Stat. § 16-120(A). That means that anyone registering by October 5, 2020 is eligible to vote in the November 2020 state and national elections. Anyone in Arizona who registered after that date is not eligible to vote in November, but may vote in the following elections.

Days before the deadline, two non-profit organizations, Mi Famila Vota and Arizona Coalition for Change (collectively, "MFV") sought a declaratory order and a preliminary injunction extending the deadline for registering for the November election. MFV claimed its own standing and did not represent potential voters. It complained that, because of COVID-19, enforcing the registration deadline would "frustrate [MFV's] mission to register as many voters as possible." Compl. ¶ 91. MFV did not allege that Arizona had imposed any particular COVID-19 restrictions that interfered with its registration activities; its complaint was based on the general inconvenience we have all had to deal with. The district court found § 16-120(A) unconstitutional as applied, and it entered a preliminary injunction extending the October 5 deadline by eighteen days to October 23 and

ordered the state to deem those who register by October 23 eligible to vote in the November election. *Mi Familia Vota v. Hobbs*, No. CV-20-01903, 2020 WL 5904952 (D. Ariz. Oct. 5, 2020).

The district court's order was an obvious abuse of discretion, for all the reasons described in our per curiam opinion. At the very last minute, on a thin complaint and record, the district court thrust itself into the election by altering the eligibility requirements for voting in Arizona. Now, according to MFV, in the days after the district court's order, thousands of Arizonans have registered, expecting to vote in the November election. MFV estimated that if the injunction remained in place, tens of thousands new electors could be added to rolls. Aside from the question of ineligible electors suddenly becoming eligible, the Secretary of State advised us how the injunction was interfering with counties responsible for registering voters and preparing the precinct registers, and that the injunction might delay the reporting of the election results.

Arizona's deadline fully complies with the National Voter Registration Act, 52 U.S.C. § 20501 *et seq.*,[1] and, as such, it is a generally-applicable and

---

[1] In the National Voter Registration Act, Congress declared among its purposes "to protect the integrity of the electoral process" and "to ensure that accurate and current voter registration rolls are maintained." 52 U.S.C. § 20501(b)(3)–(4). In § 20507, Congress instructed the states to "ensure that any

(continued...)

2

"evenhanded restriction[] that protect[s] the integrity and reliability of the election process itself." *Crawford v. Marion Cty Election Bd.*, 553 U.S. 181, 189–90 (2008) (plurality opinion) (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 788 n.9 (1983)). "Deadlines are inherently arbitrary; fixed dates, however, are often essential to accomplish necessary results." *United States v. Boyle*, 469 U.S. 241, 249 (1985). "The difficulty is that *every* electoral law and regulation necessarily has *some* impact on the right to vote, yet to strike down every electoral regulation that has a minor impact on the right to vote would prevent states from performing the important regulatory task of ensuring that elections are fair and orderly." *Weber v. Shelley*, 347 F.3d 1101, 1106 (9th Cir. 2003). It is, thus, an "aimless journey" to "decide whether some date other than the one set out in the statute" might better serve some goal, "for the purpose of a filing deadline would be just as well served by nearly any date a court might choose as by the date [the legislature] has in fact set out in the statute." *United States v. Locke*, 471 U.S. 84, 93 (1985). Improving Arizona's election code is not our business, and when we undermine long-established, neutral rules, we threaten the confidence the electorate demands

---

[1](...continued)
eligible applicant is registered to vote in an election" and required states to accept registrations filed "not later than the lesser of 30 days . . . before the date of the election." *Id.* § 20507(a)(1)(A)–(D).

in the integrity of our elections.

I concur in the stay, but I disagree with the remedy. There are no good solutions here. I am sympathetic to Arizona's election administrators, who are in a tough position, but I cannot agree to the relief the Secretary of State has requested and the majority approves: Issuing (with a grace period) a stay of the district court's preliminary injunction, but allowing those who registered after the October 5 cutoff to vote in the upcoming election. By law, those who registered after October 5 "shall not vote" because their registration was not received "before midnight of the twenty-ninth day preceding the date of the election." Ariz. Rev. Stat. § 16-120(A). They are not eligible to vote in this election, and adding thousands of ineligible voters to the rolls compromises Arizona's election. I would require the Secretary of State to enforce Arizona law.

The Secretary of State has argued that those who registered after October 5 did so in reliance on the district court's order. I don't see a strong reliance issue here. It is true that those who registered late will be disappointed not to vote in the November election, but they are now registered to vote in subsequent elections. Their registration has not been in vain. On the other hand, the citizens of Arizona have a powerful reliance interest in the evenhanded enforcement of their election code. Arizona set forth its rules in advance, in accordance with the U.S.

4

Constitution, federal statutes, and the Arizona Constitution. In the long run, it is more important that we be able to rely on the integrity of elections—that the rules be announced in advance and be fairly and equally administered—than that we declare the rules suspended for this election because of a judicial misstep.

I concur in the per curiam opinion insofar as it grants the stay pending appeal. I respectfully dissent as to the remedy. I would require Arizona officials to enforce § 16-120(A).