**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

FILE

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
JANUARY 19, 2023

González C.J.
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
JANUARY 19, 2023

ERIN L. LENNON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Recall of | ) ) | No. 101117-2 |
| JAY INSLEE, | ) ) | EN BANC |
|     Governor of the State of Washington. | ) ) ) ) | Filed: January 19, 2023 |

YU, J. — Brandon Ducharme appeals the trial court's finding that the four charges in his recall petition against Washington Governor Jay Inslee are factually and legally insufficient. After granting Ducharme's motion for accelerated review, we issued an order affirming the trial court's ruling. We now explain the reasons for our decision.

## FACTUAL AND PROCEDURAL BACKGROUND

Ducharme makes four allegations against the governor that fall into two general groups. The first group consists of two charges alleging the misuse of vetoes to legislation that occurred in 2019. The second group consists of

allegations that are connected to the governor's response to the COVID-19 pandemic in our state.

While the parties dispute the legal significance of the four actions taken by Governor Inslee, the underlying facts are not disputed here.

A. Factual allegations regarding Governor Inslee's alleged misuse of vetoes

On April 28, 2019, "the Washington Legislature passed ESHB 1160,[1] titled 'AN ACT Relating to transportation funding and appropriations.'" 1 Clerk's Papers (CP) at 5. Section 220 of ESHB 1160 appropriated funds to the Washington State Department of Transportation (WashDOT) "to issue transportation-related grants." *Id*. The bill specified that certain amounts "must be used 'solely' for nine specific grant programs." *Id*. Seven of those grant programs contained a provision that "'[f]uel type may not be a factor in the grant selection process'" (fuel type condition). *Id*. (quoting LAWS OF 2019, ch. 416, § 220); ESHB 1160, § 220(1)(a), (b), (2), (3)(a), (5)(a), (7), (9). On May 21, 2019, the governor vetoed the fuel type condition each time it appeared.

On November 10, 2021, our court addressed these partial vetoes in *Washington State Legislature v. Inslee*, 198 Wn.2d 561, 498 P.3d 496 (2021). In that case, a majority of this court held that "Governor Inslee exceeded his article III, section 12 veto power by striking the fuel type condition, which formed only

---

[1] ENGROSSED SUBSTITUTE H.B. 1160, 66th Leg., Reg. Sess. (Wash. 2019).

*In re Recall of Governor Inslee*, No. 101,117-2

one part of each appropriation item in which it appeared." *Id*. at 596. In charge

one of his recall petition, Ducharme contends that because Governor Inslee's

partial veto of ESHB 1160 was "illegal," it constitutes an "unconstitutional or

unlawful act" that subjects him to recall. 1 CP at 7.

Similarly, on April 25, 2019, the legislature enacted SSHB 1579,[2] "'relating

to implement recommendations of the Southern Resident Killer Whale Task Force

related to increasing chinook abundance.'" *Id*. at 8. The passage of SSHB 1579

was a result of the governor's convening of a task force to "identify actions that

could be taken to help sustain and recover" the "population of southern resident

killer whales." LAWS OF 2019, ch. 290, § 1.

Subsection 8(1)(a) of the bill contained the following provision:

> If section 13 of this act is enacted into law by June 30, 2019, the
> department may levy civil penalties of up to ten thousand dollars for
> every violation of this chapter or of the rules that implement this
> chapter. If section 13 of this act is not enacted into law by June 30,
> 2019, the department may levy civil penalties of up to one hundred
> dollars for every violation of this chapter or of the rules that
> implement this chapter. Each and every violation is a separate and
> distinct civil offense.

SSHB 1579. Section 13, in turn, provided for multiple government agencies to

coordinate on "demonstration projects" to "be used as a model for river

management throughout the state." *Id.* § 13(1).

---

[2] SECOND SUBSTITUTE H.B. 1579, 66th Leg., Reg. Sess. (Wash. 2019).

3

*In re Recall of Governor Inslee*, No. 101,117-2

On May 8, 2019, Governor Inslee exercised a partial veto of subsection 8(1)(a). In charge two, Ducharme maintains that the governor misused his veto because "[s]ubsection 8(1)(a) of [SS]HB 1579 is neither an entire section, nor an appropriation item." 1 CP at 8. Thus, Ducharme alleges that "[f]or the same reasons expressed in *Washington State Legislature v. Inslee*," the governor "exceeded his Article II[I], section 12 veto power by vetoing only a part of [SS]HB 1579, namely [s]ubsection 8(1)(a)." *Id*.

B.     Factual allegations regarding Governor Inslee's use of proclamations to address COVID-19 that allegedly infringed on religious rights of Washington citizens

On March 23, 2020, Governor Inslee issued Proclamation 20-25. Proclamation 20-25 stated in part that "'[a]ll people in Washington State shall immediately cease participating in all public and private gatherings and multi-person activities for social, spiritual and recreational purposes, regardless of the number of people involved, except as specifically identified herein.'" *Id*. at 28 (boldface omitted) (quoting Proclamation by Governor Jay Inslee No. 20-25 (Wash. Mar. 23, 2020), https://www.governor.wa.gov/sites/default/files/proclamations/20-25%20Coronovirus%20Stay%20Safe-Stay%20Healthy%20%28tmp%29%20%2028002%29.pdf [https://perma.cc/PJ48-WAEY]). In charge three, Ducharme alleges that because Proclamation 20-25 "prohibited all people in Washington State from participating in social, *spiritual* and recreational

4

*In re Recall of Governor Inslee*, No. 101,117-2

gatherings of any kind regardless of the number of participants," it "violated the Free Exercise Clause of the First Amendment to the United States Constitution." 1 CP at 10.

Then on August 9, 2021, Governor Inslee issued Proclamation 21-14, which required "[s]tate employees to be vaccinated for COVID-19" by October 18, 2021. *Id*. at 12; Proclamation by Governor Jay Inslee No. 21-14 (Wash. Aug. 9, 2021), https://www.governor.wa.gov/sites/default/files/proclamations/21-14%20-%20COVID-19%20Vax%20Washington%20%28tmp%29.pdf [https://perma.cc/AK47-28CT]. On October 18, 2021, pursuant to this proclamation, 435 WashDOT employees "who were exempt from the vaccine mandate on medical or religious grounds" were not accommodated and were fired. 1 CP at 12-13; *see also* Verbatim Rep. of Proc. (July 8, 2022) (VRP) at 8.[3] In charge four, Ducharme contends that employees with religious exemptions were discriminated against because they "lost their jobs at a glaringly different rate" than those with medical exemptions. 1 CP at 13.

To support this contention, Ducharme points to an August 3, 2021 e-mail by the governor's general counsel, Kathryn Leathers. In that e-mail, Ms. Leathers writes that a "decision has been made" regarding "the direction of [] mandatory

---

[3] Ducharme's original petition alleged "402" employees were fired, but at the trial court hearing, the State corrected the number to "435." VRP at 7-8. Ducharme did not object to this correction.

vaccine[s] for all employees in certain areas of employment." *Id*. at 78.

Concerning the exemptions, Ms. Leathers wrote that medical exemptions would be granted "for sure," but religious exemptions would be granted only "if we have to" and should be "as narrow as possible." *Id*. Ducharme maintains that both the rate at which employees with religious exemptions were fired and Ms. Leathers' e-mail demonstrate disparate treatment between employees with medical and religious exemptions. Consequently, Ducharme alleges that this "[d]iscrimination against employees based on their religious beliefs is contrary to the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution." *Id*. at 13.

C.    Procedural history

On May 20, 2022, Ducharme "filed a statement of charges with the Office of the Secretary of State, requesting the recall of Jay Inslee as Governor of Washington." *Id*. at 2. The Office of the Attorney General prepared the following ballot synopsis:

> The charge that Jay Inslee, as Governor of Washington, violated his oath of office and/or committed misfeasance or malfeasance, alleges:
>
> 1.    On May 19, 2021,[4] Governor Inslee violated Washington's Constitution, Article III, section 12, by vetoing a condition in ESHB 1160 specifying that "fuel type may not be a factor in the grant

---

[4] The ballot synopsis indicated an incorrect date of "May 19, 2021." However, the bill history demonstrates the bill was passed in 2019 and the governor vetoed the relevant sections on May 21, 2019. LAWS OF 2019, ch. 416, at 199.

selection process" for seven grant programs. The condition was less than a full appropriation item.

2.     On May 8, 2019, Governor Inslee violated Washington Constitution, Article III, section 12, by vetoing subsection 8(1)(a) of HB 1579, which is neither a full section nor an appropriation item.

3.     On March 23, 2020, Governor Inslee violated the Free Exercise Clause of the First Amendment of the United States Constitution by issuing Proclamation 20-25, which prohibited people in Washington State from participating in social, spiritual, or recreational gatherings.

4.     On October 18, 2021, Governor Inslee violated the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution by firing [435] Washington State Department of Transportation employees claiming medical or religious exemptions from COVID-19 vaccine requirement in a manner that discriminated on the basis of religion.

*Id*. at 17.

After receiving the parties' briefs and holding oral arguments, the trial court found that all "charges filed by proponent against Governor Jay Inslee to be legally and factually insufficient." *Id.* at 321.

On July 12, 2022, Ducharme filed a notice of appeal. We affirm the trial court's ruling.

ISSUE

Whether the four charges alleged against Washington Governor Jay Inslee are factually and legally sufficient to move forward with the recall petition.

7

BACKGROUND LAW AND STANDARD OF REVIEW

Washington's constitution grants voters the right to recall any nonjudicial elected official who "has committed some act or acts of malfeasance or misfeasance while in office, or who has violated [their] oath of office." CONST. art. I, § 33. Recall proceedings are governed by RCW 29A.56.110-.270. *See* CONST. art. I, § 34.

In the recall process, the courts act as gatekeepers and our role is "'to ensure that the recall process is not used to harass public officials by subjecting them to frivolous or unsubstantiated charges.'" *In re Recall of Riddle*, 189 Wn.2d 565, 570, 403 P.3d 849 (2017) (quoting *In re Recall of West*, 155 Wn.2d 659, 662, 121 P.3d 1190 (2005)). As such, we do not review recall charges for their truthfulness. *In re Recall of Wasson*, 149 Wn.2d 787, 792, 72 P.3d 170 (2003) (citing *Cole v. Webster*, 103 Wn.2d 280, 287-88, 692 P.2d 799 (1984)). Instead, it is the voters who determine "whether the charges are true and, if so, whether they in fact justify recalling the official." *In re Recall of Durkan*, 196 Wn.2d 652, 663, 476 P.3d 1042 (2020). Therefore, all factual allegations are taken as true. *Id.* (citing *In re Recall of Boldt*, 187 Wn.2d 542, 549, 386 P.3d 1104 (2017)).

"'The sufficiency of a recall petition is reviewed de novo.'" *Boldt*, 187 Wn.2d at 549 (quoting *Wasson*, 149 Wn.2d at 791). "Recall petitions must be both legally and factually sufficient." *Id.* at 548. Factual sufficiency is satisfied when

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

the alleged facts, taken as a whole, "'identify to the electors and to the official being recalled acts or failure to act which without justification would constitute a prima facie showing of misfeasance, malfeasance, or a violation of the oath of office.'" *Id*. (quoting *Chandler v. Otto*, 103 Wn.2d 268, 274, 693 P.2d 71 (1984)). If there is an allegation that the "official violated the law, the facts must show that the official intended to do so." *In re Recall of Inslee*, 194 Wn.2d 563, 568, 451 P.3d 305 (2019) (*Inslee* I) (citing *In re Recall of Wade*, 115 Wn.2d 544, 549, 799 P.2d 1179 (1990)).

Legal sufficiency is satisfied when a petition "'state[s] with specificity substantial conduct clearly amounting to misfeasance, malfeasance or violation of the oath of office.'" *Boldt*, 187 Wn.2d at 549 (quoting *Chandler*, 103 Wn.2d at 274) (alteration in original). If a recall charge is based on acts taken pursuant to an official's discretionary authority, the petition must show that "the execution of that discretion" was "done 'in a manifestly unreasonable manner.'" *Inslee* I, 194 Wn.2d at 572 (internal quotation marks omitted) (quoting *In re Recall of Bolt*, 177 Wn.2d 168, 174, 298 P.3d 710 (2013)). Additionally, "'[a] legally cognizable justification for an official's conduct renders a recall charge insufficient.'" *In re Recall of Pearsall-Stipek*, 141 Wn.2d 756, 766, 10 P.3d 1034 (2000) (*Pearsall-Stipek* II) (quoting *In re Recall of Pearsall-Stipek*, 136 Wn.2d 255, 264, 961 P.2d 343 (1998) (*Pearsall-Stipek* I)).

*In re Recall of Governor Inslee*, No. 101,117-2

Our recall statutes define "misfeasance," "malfeasance," and "violation of the oath of office" as the following:

> (1)   "Misfeasance" or "malfeasance" in office means any wrongful conduct that affects, interrupts, or interferes with the performance of official duty;
>
> (a)   Additionally, "misfeasance" in office means the performance of a duty in an improper manner; and
>
> (b)   Additionally, "malfeasance" in office means the commission of an unlawful act;
>
> (2)   "Violation of the oath of office" means the neglect or knowing failure by an elective public officer to perform faithfully a duty imposed by law.

RCW 29A.56.110.

## ANALYSIS

Ducharme does not show that Governor Inslee intended to violate the law in connection with any of the recall charges. Furthermore, the petition fails to demonstrate that the governor acted in a manner that was manifestly unreasonable or unjustified when the actions were taken. Therefore, charges one, two, three, and four are factually and legally insufficient.

A.   All four charges are factually insufficient because Ducharme does not show intent to violate the law

At the trial court sufficiency hearing, both parties agreed that the intent requirement was of great significance to this case, referring to it as the "big legal question" and the "big issue." VRP at 9, 16. Ducharme challenges the validity of

10

*In re Recall of Governor Inslee*, No. 101,117-2

the intent requirement generally, as well as in relation to charges one and two specifically. *See* Appellant's Opening Br. at 9, 13; Appellant's Reply Br. at 2. At the trial court hearing and in his briefing to this court, Governor Inslee argued that this is the "dispositive issue" in the case because "the lack of intent is fatal on all four charges." VRP at 16; *see also* Resp't's Br. at 23, 61, 65. We agree with the governor.

We have held that "[w]hile some inferences are permissible in a recall petition, on the whole, the facts must indicate an intention to violate the law." *Inslee* I, 194 Wn.2d at 572 (citing *In re Recall of Telford*, 166 Wn.2d 148, 158, 206 P.3d 1248 (2009)). Thus, if a petitioner is alleging the "commission of an unlawful act" they "must show facts indicating the official had knowledge of and intent to commit an unlawful act." *Boldt*, 187 Wn.2d at 549 (citing *Telford*, 166 Wn.2d at 158). "This requires demonstrating not only that the official intended to commit the act, but also that the official intended to act unlawfully." *Pearsall-Stipek* I, 136 Wn.2d at 263 (citing *In re Recall of Sandhaus*, 134 Wn.2d 662, 670, 953 P.2d 82 (1998)).

Here, Ducharme fails to show that Governor Inslee intended to violate the law in any of the circumstances alleged in his petition. However, Ducharme claims that he should not have to do so. Instead, Ducharme argues that our court recently limited the requirement to show intent in recall petitions to situations

11

where an official "act[s] criminally." Appellant's Opening Br. at 9. Alternatively, Ducharme argues that we should "overrule" cases "requiring intent outside of the criminal and hyper-technical context" or that we should limit it to malfeasance charges. *Id*. at 13. We reject both arguments.

First, Ducharme contends that in 2019, our court "clarified that the intent to act illegally requirement only applies to acting criminally." *Id*. at 9 (citing *In re Recall of Fortney*, 196 Wn.2d 766, 776, 478 P.3d 1061 (2021)). Ducharme points to a single statement in our *Fortney* opinion that "[t]he petitioners accuse Fortney of violating his statutory duties rather than of committing any legal crime, and thus, they were not required to demonstrate intent." 196 Wn.2d at 776. However, as Governor Inslee aptly points out, Ducharme misinterprets this statement because he fails to recognize the context in which it was made.

In *Fortney*, our court analyzed the sufficiency of recall charges against Sheriff Adam Fortney. *Id*. at 769. Relevant to the arguments here, charge two alleged that Fortney "'endangered the peace and safety of the community and violated his statutory duties'" by "'inciting the public to violate Governor Inslee's "Stay Home – Stay Healthy" proclamation.'" *Id*. at 770 (quoting record). We affirmed the trial court's ruling that charge two was legally and factually sufficient. *Id*. at 772. In our analysis for charge two, we addressed two different issues

relating to Fortney's intent but, in doing so, we did not overrule or narrow the intent requirement for recall petitions.

First, the court considered Fortney's claim "that he encouraged individuals only to contact their representatives." *Id.* at 774. The partial dissent argued that "Fortney's public statements" when reviewed as a whole "did not amount to incitement to violate the law" because they only "constituted announcements of his discretionary decisions about how to enforce the law." *Id*. at 789 (Gordon McCloud, J., concurring in part/dissenting in part). However, the majority held that the combination of "Fortney's statements" and his "express refusal to enforce the [Stay Home – Stay Healthy proclamation] could be interpreted as a catalyst for action." *Id*. at 775.

The majority determined that the fact "[t]hat reasonable minds may disagree about the interpretation of Fortney's words" was the exact reason why the "charge should proceed to the voters." *Id*. (emphasis omitted). Therefore, we deferred to the "voters to draw reasonable inferences from all the facts." *Id*. at 776. In that context, we noted that "voters may infer that Fortney's public statements" in combination with his refusal to enforce the law "were *intended* to telegraph more than just an 'announcement[ ] of his discretionary decisions.'" *Id*. (emphasis added) (alteration in original) (quoting *Fortney*, 196 Wn.2d at 789 (Gordon McCloud, J., concurring in part/dissenting in part)). Thus, this reference to

13

"intent" related to the interpretation of Fortney's public statements, not the intent requirement for factual sufficiency in a recall case.

Next, we addressed Fortney's argument that charge two "should be reversed because he did not intend for people to violate the law" within the meaning of the "accomplice liability statute." *Id*. at 776 (emphasis omitted). We rejected this argument because Fortney was not accused "of engaging in criminal conduct pursuant to RCW 9A.08.020." *Id.* Instead, the petitioners were "merely us[ing] 'incite' according to its plain, ordinary meaning to 'move' people to action." *Id.* Therefore, we simply held that the petitioners in *Fortney* "were not required to demonstrate intent" pursuant to the criminal accomplice statute because they did not allege that Fortney was a criminal accomplice. *Id.* Viewed in this context, our opinion cannot reasonably be interpreted to hold that the intent requirement applies only to criminal conduct, as Ducharme argues.

Moreover, accepting Ducharme's interpretation of *Fortney* would require us to ignore, if not silently overrule, our recall cases that have required a showing of intent outside of alleged criminal conduct. *See, e.g.*, *In re Recall of Estey,* 104 Wn.2d 597, 604-05, 707 P.2d 1338 (1985) (charge alleging violation of OPMA[5]); *Wade*, 115 Wn.2d at 549-50 (1990) (charge alleging hiring discrimination on the basis of sex); *Pearsall-Stipek* I, 136 Wn.2d at 264 (charge alleging violation of free

---

[5] Open Public Meetings Act of 1971, ch. 42.30 RCW.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

speech); *Sandhaus*, 134 Wn.2d at 670 (charge alleging failure to comply with statute to obtain bond); *In re Recall of Heiberg*, 171 Wn.2d 771, 778-79, 257 P.3d 565 (2011) (charge alleging purchase in violation of state law and ordinance). Because we did not analyze or disavow any of these cases in *Fortney*, Ducharme's approach would contradict our rule that "'[w]here we have expressed a clear rule of law . . . we will not—and should not—overrule it sub silentio.'" *State v. Lupastean*, 200 Wn.2d 26, 40, 513 P.3d 781 (2022) (second alteration in original) (quoting *Lunsford v. Saberhagen Holdings, Inc.*, 166 Wn.2d 264, 280, 208 P.3d 1092 (2009)). Therefore, we decline to adopt Ducharme's interpretation of *Fortney*.

Alternatively, Ducharme argues that we should overturn our precedent requiring intent because it is "wrong, harmful, and lacking in legal underpinnings." Appellant's Opening Br. at 27. Ducharme states that the intent requirement is incorrect and harmful because it construes "the statute in favor of the elected official" and it "sends the wrong message to officeholders" to avoid recall by hiding their "subjective intent." *Id.* at 22. Additionally, Ducharme argues that the legal underpinnings "are non-existent" because the intent requirement "was originally applied only in OPMA cases" and then expanded to other situations through dicta. *Id.* at 23-24 (boldface omitted). Finally, Ducharme argues that we

should not read intent into recall cases as the legislature rejected a "version of the recall statute that explicitly required intent." Appellant's Reply Br. at 10.

These points overlook the role that the courts play in the recall process and the purpose for the intent requirement. Our role as "gatekeepers" requires us to ensure that public officials are not harassed by "'frivolous or unsubstantiated charges.'" *Riddle*, 189 Wn.2d at 570 (quoting *West*, 155 Wn.2d at 662). Accordingly, the "primary purpose of the intent requirement is to shield elected officials from recall where their actions, though not statutorily compliant, are attributable to a 'simple mistake.'" *Id.* at 574-75 (quoting *Heiberg*, 171 Wn.2d at 779). This is also consistent with "the framers' intent to 'prevent recall elections from reflecting on the popularity of the political decisions made by elected officers'" by requiring a show of cause for recall. *Telford*, 166 Wn.2d at 159-60 (quoting *Chandler*, 103 Wn.2d at 271). We therefore decline to disavow our precedent.

Thus, we reaffirm that factual sufficiency requires a showing of intent to violate the law, and that the intent requirement applies to all of the charges in this case. Ducharme makes no attempt to show the governor's intent to violate the law as to charges one and two. Charges three and four do not fare any better. Ducharme simply does not point to any facts showing that Governor Inslee intended to violate the law in either charge.

16

In charge three, Ducharme asserts that "Governor Inslee knew or should have known that . . . meeting for religious purposes is part of the free exercise of religion," and that the governor had religious freedom "within his sights" when issuing Proclamation 20-25.  1 CP at 10; Appellant's Opening Br. at 55.  However, Ducharme fails to provide any facts supporting these assertions.  There is nothing to indicate that Governor Inslee intended to infringe on the free exercise of religion or that the governor targeted anyone when he issued this proclamation.

Charge four is similarly deficient in facts that demonstrate intent because this charge focuses on the actions of someone other than the governor.  The only evidence of intent Ducharme cites is an e-mail written by Ms. Leathers.  However, an official cannot be recalled "'for the act of a subordinate done without the official's knowledge or direction.'"  *Durkan*, 196 Wn.2d at 664 (quoting *In re Recall of Morrisette*, 110 Wn.2d 933, 936, 756 P.2d 1318 (1988)).  There is no indication Ms. Leathers wrote her e-mail with the governor's knowledge or direction.  Thus, like charge three, charge four is unsupported by facts that demonstrate Governor Inslee's intent to violate the law.

For these reasons we affirm that charges one, two, three, and four are factually insufficient.

17

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

B.       All four charges are legally insufficient because Ducharme does not show the governor's discretionary acts were manifestly unreasonable or lacked a legally cognizable justification

In addition to being factually insufficient, charges one, two, three, and four are also legally insufficient.

All four of Ducharme's allegations call into question the governor's discretionary authority in different circumstances, yet he fails to show that the governor's actions were "'manifestly unreasonable,'" as required by our precedent. *Bolt*, 177 Wn.2d at 174 (quoting *In re Recall of Shipman*, 125 Wn.2d 683, 685, 886 P.2d 1127 (1995)). Relatedly, Governor Inslee's "actions occurred in the course of justifiable conduct" at the time they occurred, rendering all four charges legally insufficient. *Id*. at 175 (citing *In re Recall of Kast*, 144 Wn.2d 807, 815, 31 P.3d 677 (2001)); *cf. In re Recall of Carkeek*, 156 Wn.2d 469, 475, 128 P.3d 1231 (2006) (fear of attack was a legally cognizable justification for official's unsuccessful attempt to exclude individuals from public meetings).

As to the vetoes underlying charge one, although we ultimately held that the governor exceeded his veto authority, the governor's justifications for exercising his veto were not manifestly unreasonable as demonstrated by the divided opinion at this court. *See Wash. State Legislature v. Inslee*, 198 Wn.2d 561. In charge two, the governor had similar justifications for exercising his veto, except that this veto has never been found to be illegal. *See* 2 CP 383-84.

*In re Recall of Governor Inslee*, No. 101,117-2

As to charge three, Ducharme claims that he does not challenge the governor's authority "to issue [p]roclamations dealing with the pandemic," such as Proclamation 20-25. Appellant's Reply Br. at 17. Nevertheless, Ducharme appears to argue that he need not show the governor abused his discretion or lacked legal justification because Proclamation 20-25 allegedly interferes "with the free exercise of religion." *Id.* Ducharme's argument is contrary to controlling authority.

In assessing the legal sufficiency of charge three, we must consider the context for the governor's actions. Proclamation 20-25 was issued in response to the COVID-19 pandemic, which we have already recognized was a "public health emergency." *In re Recall of Inslee*, 199 Wn.2d 416, 420, 508 P.3d 635 (2022) (*Inslee* II). During a declared emergency, the governor has "broad discretionary authority to issue emergency proclamations restricting 'activities [the governor] reasonably believes should be prohibited to help preserve and maintain life, health, property or the public peace.'" *Id.* at 426 (alteration in original) (quoting RCW 43.06.220(1)(h)). Simply alleging that an emergency proclamation interferes with "fundamental rights" is not sufficient to satisfy a recall petitioner's "burden to show that the governor exercised his discretion in a manifestly unreasonable manner." *Id.* 429-30. Ducharme's allegation that Proclamation 20-25 interfered with the free exercise of religion is similarly insufficient.

19

*In re Recall of Governor Inslee*, No. 101,117-2

Moreover, the governor issued Proclamation 20-25 when "vaccinations and treatment protocols for COVID-19 . . . had not yet been developed." *Id*. at 430. At that time, a limitation on the size of in-person gatherings was one of the few tools available to contain the virus. This context shows that Proclamation 20-25 was issued "to combat the COVID-19 pandemic, not to suppress" the free exercise of religion. *Id*. at 430. In fact, religious services were never completely prohibited by Proclamation 20-25, and restrictions on in-person gatherings began to ease less than two months later. *See* Proclamation by Governor Jay Inslee No. 20-25.3 (Wash. May. 4, 2020), https://www.governor.wa.gov/sites/default/files/proclamations/20-25.3%20-%20COVID-19%20Stay%20Home%20Stay%20Healthy%20-%20Reopening%20%28tmp%29.pdf [https://perma.cc/J6PC-DJ5Q].

"The United States Supreme Court has recognized the authority of state governors to issue proclamations limiting the size of in-person gatherings" to protect "the safety and health of the people." *Inslee* II, 199 Wn.2d at 431 (citing *S. Bay United Pentecostal Church v. Newsom*, 590 U.S. ___, 140 S. Ct. 1613, 207 L. Ed. 2d 154 (2020) (Roberts, C.J., concurring)). Particularly in areas "'fraught with medical and scientific uncertainties,'" the governor's "'latitude must be especially broad,'" and we "appropriately defer to such decisions." *Id*. at 432 (internal quotation marks omitted) (quoting *S. Bay United*, 140 S. Ct. at 1613). Given this context, we hold that charge three is legally insufficient. The governor had a

20

*In re Recall of Governor Inslee*, No. 101,117-2

legally cognizable justification for issuing Proclamation 20-25, and he did not manifestly abuse his discretion in doing so.

For charge four, Ducharme similarly fails to show any abuse of discretion or legally unjustifiable conduct by the governor. As mentioned above, charge four alleges that 435 employees of the WashDOT were fired on a discriminatory basis. However, there is no indication that the governor fired those employees. The only connection between the governor and the alleged discrimination is an e-mail sent by the governor's general counsel, without the governor's knowledge or direction. An official cannot be recalled "'for the act of a subordinate done without the official's knowledge or direction.'" *Durkan*, 196 Wn.2d at 664 (quoting *Morrisette*, 110 Wn.2d at 936). Accordingly, Ducharme has not shown that the governor discriminated against anyone in connection with charge four.

Consequently, charges one, two, three, and four are legally insufficient.

CONCLUSION

Ducharme's recall petition is legally and factually insufficient because it is missing key elements required in a recall case, including intent to violate the law, a manifestly unreasonable exercise of discretion, and actions taken without legal justification. Therefore, we affirm the trial court's decision and hold it properly dismissed the four charges before us.

21

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Recall of Governor Inslee*, No. 101,117-2



Yu, J.

WE CONCUR:

González, C.J.

Stephens, J.

Johnson, J.

Gordon McCloud, J.

Madsen, J.

Montoya-Lewis, J.

Owens, J.

Whitener, J.